O’Nuall, J.
delivered the opinion of the Court,
This case maybe considered under three heads: 1. Undue influence in the execution of the will. 2. Undue influence in preventing the revocation. 3. Fraud and other circumstances rendering the will void.
1. The doctrine of undue influence, as stated by the Judge below, in his charge to the jury, meets with the approbation of this Court. The cases of Farr v. Thomson, and O’Neall, executor, v. Farr, are full and clear statements of the rules by which cases of this kind are to be regulated. In Farr v. Thomson, our late brother Earle, with his accustomed clearness and precision, stated the result of his examination of that which constituted such an exemption from undue influence *53 as to free his will from that objection, to be, that the party “ must be free, and under no compulsion from such threat or v violence as may be reasonably supposed to move a constant man.” I am very much inclined to agree with him in saying, that this whole doctrine of undue influence is an innovation of our own. Unquestionably such a thing as avoiding a will, executed by a sane man, with the solemnities required by the Statute of Frauds, was never heard of in England, unless fraud or imposition was fully and clearly made out, A testament was a much slighter thing, and stood upon no such strongly fortified grounds, as a will executed under the Statute of Frauds: and to such a disposition of goods, the rules of the civil law let in a multitude of objections, which in no sort applied to the devise. Still, I have no where found such a substantive head as undue influence.— When it amounts to putting in fear or fraud, then it might have such an eifect, but never otherwise. In Williams on Executors, 34, it is said very justly, — “ the influence to vitiate an act must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment ; it must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in support of a testamentary act; further, there must be proof that the act was obtained by this coercion; by importunity which could not be resisted; that it was done merely for the sake of peace; so that the motive was tantamount to force and fear.” How a man of sana mens in sano corpore, can.be the subject of undue influence, so as to avoid his acts, I never have been able to understand. He may have unreasonable likes and dislikes, he may act from false reasoning, he may act unjustly, and even cruelly towards his family, in the disposition of his estate, still his will, when legally expressed, must be supported. When, however, it can be shewn that he is a man of weak capacity, or laboring under sickness, rendering him incapable of seeing and understanding as he would do if well, then it may well be that one having influence over him, may, by false statements, or by encouraging enmities against his kindred, lead him to make a will, which is, like its origin, false, and therefore originating in fraud, must be void.
Swinb. 887.
Swinb. 888 & 889.
But even in such a case of weakness, “ it is not unlawful” to lead such a mind, “ by honest intercessions, or modest persuasions, to make a will.” If, however, the will of such an one be procured by fair and flattering false speeches, or he be in the power of another, and to increase his comfort, or insure his safety, in health or property; or if it be the result of great importunity addressed to such weakness, — in these and similar cases, it would be avoided. In this case the testator was a man of weak infirm health, but up to the period *54 of the execution of his will, he was perfectly able to attend i to his own afFairs. There is not the slightest evidence of any persuasion or influence, exercised by the defendant over him. The testator prepared his will by the aid of counsel, and executed it in the presence of gentlemen, who were far, very far from giving any sort of encouragement to undue influence. Up to that time, there is no reason to believe that the defendant had paid a dollar for him: nor does it appear that he made any promise to advance money to cover his wants. I have little doubt, from the proof, that the testator was displeased with his youngest sister’s marriage, that Henry Burton, the husband of his second sister, had seriously offended him, that he heard Chandler, the husband of his eldest sister, was insolvent, and that their cruelty to slaves was such, he was unwilling to give them any, and that he believed his unfortunate demented brother John was incapable of managing his own affairs; and that these things induced him to make the will which he did. If this be so, there is no ground to say the will propounded is not his.
Columbia, May, 1848. Floyd v. Floyd.
33 Eng. Com, L. Rep, 57.
2. The next matter to be considered, is that of undue in-, fluence in preventing the revocation, and thus creating, (if true,) as the parties suppose, an implied revocation. Here again it might be enough to say, that after the supposed interference or influence to prevent the revocation, the testator had the opportunity to revoke his will, and yet did not; and this, according to iSwinb. 991, destroys the conclusion, which might, without it, have been drawn from the influence exercised. For the testator, after the time proved by Jesse Moats, Mrs. Chandler, and Major Chandler, when, as they allege, the appellee exercised a controlling influence to prevent the revocation of the will, was twice at Newberry Court House, and Col. Fair, in whose possession the will was, was at both of those dimes, at home.
But a will executed according to our Acts of ’89 and ’24, cannot be thus revoked. They require in real and personal estate, that a will can only be revoked in three ways : 1st. By an instrument in writing, executed with the same solemnities as the will itself. 2d. By obliteration. 3d. By burning or destroying. The case of Doe on the demise of Reed v. Harris, was a case of freehold devised to the defendant, claimed by the heir. It appeared that the testator intending to revoke the will, threw it, enclosed- in an envelope, on the fire; the|devisee standing by snatched it off; the envelope was only slightly burned, the will was untouched; the de-visee secreted it from him, and afterwards induced him to believe that she had burned it herself. It was held by Den-man, Patterson, Williams, and Coleridge, of the King’s bench, that this was no revocation within the Statute of Frauds, the provision of which, in that respect, is identical with our *55 Acts of ’89 and ’24. Another case between the same parties, on the same will, for copy-hold lands, was heard in the Exchequer Chamber before Denman, Littledole, Williams, and Coleridge, and they held that as copy-hold lands were not within the Statute, the will must be judged of as if the Statute had not been passed. “ In such case,” said Lord Denman, “ the law would have required clear evidence of a positive declaration of the intent to revoke, at the time such declaration was made, or some act done with the intent thereby to revoke ; and the jury would have had to determine whether, in fact, such declaration was made or act done.” Taking these two cases together, it is clear, when the law is as under our Acts, in relation to real and personal property, that there can be a revocation in no other mode than that pointed out by the law, unless it be in the case of implied revocation by marriage and birth of issue, which was considered well settled before either of our Acts were passed.
3. This makes it necessary to look at the third inquiry, — were there such facts proved, in this case, as shewed that this will was prevented from being revoked by fraud, and being inoperative, until the testator’s death, it is therefore to be regarded as infected by fraud, and therefore void ? I am not prepared to say, that even a fraudulent prevention of revocation would set aside the will. For, at most, to say so, would be only giving eifect to that, in another form, which it is denied can have effect as a revocation. But assuming that it might have such an effect, in this case there is no pretence to say that any such fraud existed. It most abundantly appears that the testator, for very good reasons, might have wished to place his property in other hands than his heirs: his discontents with his will have been mostly proved by Mrs. Chandler and her husband — his statements to the former may all be very well accounted for in his desire to conciliate her, and his belief that the appellee would carry out his wishes as to her; — as to the proof of Major Chandler, it may be remarked that it is hardly likely that a sensible man, as the appellee is represented to be, would have made such statements as he proved, to the very man who would use them against him. As to Jesse Moats’s proof, there was great reason to believe he was mistaken. For there certainly was as strong proof of an alibi as ever I heard. But put all they have proved together as true, and it only makes this case, that in April, ’47, the testator wished to alter his will, that the appellee promised that he should have that opportunity'the next day, by bringing the will and Col. Fair, in whose possession it was, to his house, that the appel-lee failed to comply with this promise, — that again he told him every thing must remain as it was, or he (the appellee) would quit him, and that he (the appellee) was interested, *56 and would prevent him, if he could, from altering his will. , Stating the testimony thus, makes a strong prima facie shewing. Still, out of it, no inference can certainly arise that the testator was prevented against his will from revoking. He knew where his will was — he had friends constantly about him — he had means by which he could have had any thing dono which he desired. If he had simply whispered in the ear of Major Chandler or Mrs. Chandler, that he wished to alter his will, and that he needed a lawyer’s aid for that purpose, one would have been at his bed side in less than six hours. There is little doubt, that in his sick hours, as he was approaching, as he supposed, the gates of death, and as he was recovering, that he thought and spoke of altering his will: there is very little doubt thát the appel-lee may then have desired him to defer it to a more suitable occasion, and that he might even have argued with him against it. Still there is no evidence of fraud in all this. For the appellee might legally reason with him, and even persuade him not to alter his will. The testator, too, had months to reflect upon it; and opportunities and means to revoke his will. He did not do so, and we are therefore bound to say that the will propounded is not affected by fraud.
The various other grounds of appeal need no other answer than such as are given in the report.
The motion is dismissed.
Richardson, J. Evans, J. Frost, J. and Withers, J. concurred.