1954

Katherine A. HEMBREE, Appellant v. ESTATE OF
Willie A. HEMBREE Respondent.

(428 S.E. (2d) 3)

Court of Appeals

*Michael Ray Ellisor,* Batesburg, *for appellant.*

*Jeff M. Anderson of Bouknight, Nicholson, Davis & Young,* Lexington, *for respondent.*

Heard Jan. 20, 1993; Decided Feb 11, 1993.

Reh. Den. March 12, 1993.

*Per Curiam:*

Appellant Katherine A. Hembree (contestant) initiated this action in the probate court contesting the will of Willie A. Hembree (testator) on the grounds of undue influence and testator incapacity. The matter was removed to the Court of Common Pleas for Lexington County and proceeded to a jury trial. At the close of contestant's evidence, Respondent moved for and the trial judge directed a verdict in favor of the estate on both issues. The lower court then remanded the matter back to the probate court. Contestant appeals. We affirm.

The testator died on September 23, 1989. He left a will, executed September 30, 1988, devising his residuary estate to Andrea Bowers (Andrea), Carolyn Shumpert (Carolyn), and Janice Dunker, his three daughters by his first marriage, and leaving contestant, who was his second wife, an income interest in a trust comprised of one-third of his probate estate. Before the execution of this will, testator had executed a will in 1979 which left contestant nothing.

Generally, when the formal execution of a will is admitted or proven, a *prima facie* case in favor of the will is made out. *Calhoun v. Calhoun*, 277 S.C. 527, 290 S.E. (2d) at 415 (1982). The burden is then on the contestant to prove testator incapacity or undue influence. *Id.* at 530, 290 S.E. (2d) at 417. However, in determining whether this burden has been met, we are required to view the evidence in the light most favorable to the contestant. *Id.*

During the summer before the will's execution, testator had been hospitalized for head surgery.[1] Following the surgery, he was physically weak. Moreover, he had problems conversing with others, often repeating or forgetting what he had said or not being able to maintain a conversation.

During this hospital stay, Andrea went into his lockbox and removed its contents. Also at this time, Carolyn talked privately with him about his will. Initially, the testator wanted an attorney to come to the hospital and make a new will. However, Carolyn persuaded him instead to plan an appointment for after his release. He agreed and requested that she arrange a meeting at the law firm at which she worked. Before he met with an attorney and under the advice of an attorney

---

[1] The surgery was performed to lessen pressure on the brain because of blood clots.

with the firm, Carolyn obtained a medical opinion as to testator's capacity.

On August 23, 1988, testator met with an attorney at the firm at which Carolyn worked. Carolyn's husband had driven him to the appointment. When the testator arrived, Carolyn greeted her father. However, she did not sit in on the attorney-client conference nor did she discuss the testator's will with the attorney.

In early September, Carolyn delivered a letter dated September 6, 1988, from the attorney to the testator concerning the testator's wishes as to disposition of certain assets. In response to this letter, the testator directed Andrea to prepare two letters detailing his wishes concerning his estate. She did so but admits brushing up the grammar and sentence structure. On September 12 1988, Carolyn picked up the testator from his house and drove him to a nearby filling station where he signed these letters.

On September 30, 1988, the decedent executed his will and a power of attorney in favor of Andrea at the law offices. Both Carolyn and Andrea were present but neither witnessed nor were in the attorney's office during the execution. At the testator's request, Carolyn was given the will for safekeeping. Contestant asserts this evidence is sufficient to present the issues of undue influence and testator capacity to a jury. We disagree

First, the contestant argues that the testator did not understand his will and for this reason he lacked capacity. The test of capacity necessary to make a will is whether the testator knew his estate, the objects of his affections and to whom he wished to give his property. *Hellams v. Ross*, 268 S.C. 284, 233 S.E. (2d) 98 (1977). Moreover, the presumption arises upon proof of due execution of the will that the testator knew its contents and this is sufficient to establish testator knowledge thereof. *In re Estate of O'Neill*, 259 S.C. 55, 190 S.E. (2d) 754 (1972).

The contestant relies on the fact that the testator had undergone head surgery and was under medication to challenge his ability to understand the will. She never asserts he was mentally incapacitated. Instead, she states he could not have understood the complex will and she is unsure if he understood the breadth of his estate. However, there was no evi-

dence either from the drafting attorney or the subscribing witnesses concerning his condition at the time of the execution. Their testimony would have been quite illuminating as to his condition, but the contestant chose not to call them.

Moreover, the mere fact that the will was a complex document which required explanation from the drafting attorney does not convince us that the testator lacked the capacity to execute this document. On the contrary, the similarity of disposition in the 1979 will and the 1988 will established that the testator recognized who his lived ones were and to whom he wished the majority of the estate to go. In fact, the apparent reason the testator wanted the new will was because a change in South Carolina law could undermine his wishes as expressed in the 1979 will.[2] We find no sufficient evidence to establish testator incapacity at the execution of the will and therefore no error in directing a verdict on this issue.

Futhermore, we find no error in the lower court's refusal to submit the issue of undue influence to the jury.

The mere existence of influence is not enough to void a will as all influences are not unlawful. *Smith v. Whetstone*, 209 S.C. 78, 39 S.E. (2d) 127 (1946). For influence to vitiate a will, it must destroy free agency and amount to force and coercion. *Todd v. Woodard*, 297 S.C. 264, 376 S.E. (2d) 276 (1989); *Calhoun*, 277 S.C. at 532, 209 S.E. (2d) at 418: *Smith*, 209 S.C. at 83, 39 S.E. (2d) at 129. Circumstances must unmistakably and convincingly point to the substitution of another's will for that of the testator. *Calhoun*, 277 S.C. at 530, 290 S.E. (2d) at 417. In cases where allegations of undue influence have been successful, there has been evidence of threats, force, restricted visitation, or an existing fiduciary relationship at the time of or before the will's execution. *See Moorer v. Bull*, 212 S.C. 146, 46 S.E. (2d) 681 (1948); *Byrd v. Byrd*, 279 S.C. 425, 308 S.E. (2d) 788 (1983).

However, even if a contestant does establish an inference of undue influence, the unhampered opportunity of the testator to change the will after the operation of

---

[2] Under the common law prior to 1984, the contestant would only have had a dower interest in the testator's estate. *But see Boan v. Watson*, 281 S.C. 516, 316 S.E. (2d) 401 (1984) (holding that dower was unconstitutional). Under the South Carolina Probate Code, the contestant, if proceeding under the 1979 will, could claim one-third of the testator's probate estate outright. *See* S.C. CODE ANN. § 62-2-201 (Supp. 1992).

undue influence destroys this conclusion. *Calhoun,* 277 S.C. at 532, 290 S.E. (2d) at 419. The court's directing of a verdict in that instance is proper. *Id*

The contestant asserts that Andrea and Carolyn unduly influenced the testator to leave the majority of the estate to them and their other sister. She bases this allegation on the facts we have set out above. However, there was no evidence that Carolyn or Andrea coerced the testator by force or threat to sign the letters, set up the appointment, go to the law offices, or make the will. They were not in the room when the will was executed nor when the testator first met with the attorney. They had no way of knowing what he was signing until after the fact. At most, the evidence showed opportunity, which alone did not create an issue of fact. *See Todd,* 297 S.C. at 266, 376 S.E. (2d) at 278.

Moreover, the testator had plenty of time, unhampered by the presence and operation of the alleged influence, to change or revoke his will. His death was not until almost one year after the will's execution. During this time he remained active. He played golf, drove a car, and handled his business affairs. In addition, he lived with the contestant, not the persons allegedly practicing the undue influence. In fact, there was testimony that visits from the alleged influencers were rare. Testator's failure to void or alter the will during this period destroys any inference of undue influence that may have arisen from the other testimony. As a result, we find the granting of the directed verdict was proper.

Affirmed.

