511 S.E.2d 390

**In re ESTATE OF Lillian CUMBEE.**

**Calvin Cumbee, Appellant,**

**v.**

**Melvin Cumbee, Respondent.**

**No. 2920.**

Court of Appeals of South Carolina.

Submitted Dec. 8, 1998.

Decided Jan. 4, 1999.

666

Shirrese B. Brockington, of Charleston, for Appellant.

Benjamin Goldberg, of Charleston, for Respondent.

ANDERSON, Judge:

This case involves a will contest between two sons of the late Lillian Cumbee. The probate judge rejected wills Mrs. Cumbee executed in 1991 and 1994, finding both were the product of undue influence. The judge admitted for probate a will Mrs. Cumbee executed in 1987, and included in her estate funds her son Calvin Cumbee held in his own name. The circuit court affirmed in result. Calvin appeals. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

On February 6, 1987, Lillian Cumbee and her husband, Jasper L. Cumbee, Sr., executed a joint will in which each left the estate to the other. The will provided that in the event of their simultaneous deaths or upon the death of the survivor, their estate (with the exception of a few specific devises) was to be distributed to their son, Calvin Cumbee, to be held in trust for the lifetime care of their disabled daughter, Garnetta Cumbee. Upon Garnetta's death or, if Garnetta predeceased the Cumbees, upon the death of the Cumbees, the remainder was to be divided equally among the Cumbees' eight other children.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Mr. Cumbee passed away on July 26, 1988, leaving Mrs. Cumbee over $140,000 in cash and property. Shortly after her husband's death, Mrs. Cumbee moved in with her son Calvin and his wife, Ruth. Mrs. Cumbee returned to her own home several times before finally taking up permanent residence with Calvin and Ruth in early 1989. Mrs. Cumbee was then in her early 80's, and Ruth was primarily responsible for taking care of Mrs. Cumbee's daily needs and administering her various medications. Mrs. Cumbee reportedly paid Calvin $150 per week to live in his home; Calvin acknowledged receiving only $100 per week. Within a year of his father's death, Calvin completely took over his mother's financial affairs.

On March 6, 1991, Mrs. Cumbee executed a second will, naming her son Melvin Cumbee as executor. The 1991 will expressly revoked all prior wills and the trust fund for Garnetta, and directed that her estate be distributed equally to all of her children who survived her. This will was made while Mrs. Cumbee was visiting with her son Melvin at his home in Hanahan.

Before her health started to fail, Mrs. Cumbee would occasionally spend the day with her sister-in-law, Myrtle Wright, or spend the week with one of her daughters, Maxine Nobles. However, after her health problems decreased her mobility, Mrs. Cumbee spent most of her time in her bedroom at Calvin's house. Although she was staying in his home, sometimes a week would pass where Mrs. Cumbee did not see Calvin.

On February 15, 1994, Mrs. Cumbee executed a third will which revoked all prior wills. Mrs. Cumbee named her son Calvin as her personal representative and left him her entire estate, with one dollar for each of the remaining children, including her disabled daughter Garnetta. In the event Calvin predeceased Mrs. Cumbee, Calvin's wife, Ruth, was to receive $30,000, and the other children were to take the residue of the property per capita.

Mrs. Cumbee died in Berkeley County on September 23, 1994 at the age of 89. Calvin offered the 1994 will for probate. He listed a residence valued at $35,900 as the only asset of the

estate. Melvin offered the 1991 will for probate. A will contest ensued.

The probate judge found Mr. and Mrs. Cumbee contracted to make a joint will providing for the lifetime care of their incapacitated daughter Garnetta. The judge found the 1987 reciprocal will created a valid contract and Mrs. Cumbee must be held to the contractual obligations to her husband. As an additional sustaining ground, the judge found the 1991 and 1994 wills were invalid due to Mrs. Cumbee's diminished capacity[2] and the evidence of undue influence. Accordingly, the judge denied probate of the 1991 and 1994 wills and ordered that the terms of the 1987 joint will be carried out. The judge determined Mrs. Cumbee's estate consisted primarily of a home worth around $35,000 and approximately $107,000 in cash which was held mostly in certificates of deposit. The money was left to Mrs. Cumbee by her husband and was originally deposited in accounts jointly held with her son Calvin. However, approximately one year after his father's death, Calvin transferred the money out of his mother's joint accounts and into accounts held solely in his own name. The probate judge found this money was an estate asset.

Calvin appealed to the circuit court, contending the probate judge erred in denying probate of the 1994 will on the ground of undue influence and in including the $107,000 held in Calvin's name in Mrs. Cumbee's estate. The circuit court rejected the probate judge's finding the 1987 will created a contractual obligation, stating under the South Carolina Probate Code, the execution of a joint will does not create a presumption of a contract not to revoke the will. *See* S.C.Code Ann. § 62–2–701 (Supp.1997). However, the court affirmed the probate judge's ruling the 1994 will was vitiated by undue influence and, since the will was void *ab initio*, the 1987 will was not revoked and remained valid at the time of Mrs. Cumbee's death.[3] The court affirmed in result the

---

2. The judge found Mrs. Cumbee was not mentally incompetent.

3. The circuit court noted both the 1991 and 1994 wills were the product of undue influence; thus, neither will effectively revoked the 1987 will. However, the court stated Calvin did not appeal the probate judge's ruling regarding the validity of the 1991 will; therefore, the 1991 will would not be considered by the court.

probate judge's decision to probate the 1987 will. Finally, the court affirmed the probate judge's decision to include in Mrs. Cumbee's estate the $107,000 held by Calvin in his own name. Calvin appeals.[4]

## ISSUES

I. Did the circuit court err in finding the 1994 will was the product of undue influence?

II. Did the circuit court err in disregarding the fact Mrs. Cumbee had the opportunity to change her 1994 will after the alleged exercise of undue influence?

III. Did the circuit court err in finding S.C.Code Ann. § 62-2-508 (1987) addresses only revival of a former will in cases where a subsequent will has been revoked by a physical act?

IV. Did the circuit court err in finding the $107,000 in Calvin's name should be included in Mrs. Cumbee's estate?

## STANDARD OF REVIEW

 An action to contest a will is an action at law. *Johnson v. Johnson,* 235 S.C. 542, 112 S.E.2d 647 (1960); *In re Estate of Weeks,* 329 S.C. 251, 495 S.E.2d 454 (Ct.App. 1997); *Golini v. Bolton,* 326 S.C. 333, 482 S.E.2d 784 (Ct.App. 1997). If the proceeding in the probate court is in the nature of an action at law, the circuit court and this Court may not disturb the probate judge's findings of fact unless a review of the record discloses there is no evidence to support them. *See In re Howard,* 315 S.C. 356, 434 S.E.2d 254 (1993); *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976); *In re Estate of Weeks,* 329 S.C. 251, 495 S.E.2d 454.

 Under the Probate Code, a circuit court hearing an appeal from the probate court must apply the same rules of law as an appellate court would apply on appeal. S.C.Code

---

4. Neither party appealed the circuit court's ruling the 1987 will did not create a contract to will. This ruling and the probate court's unappealed rejection of the 1991 will are now the law of the case. *See Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 177 S.E.2d 544 (1970) (an unchallenged ruling, "right or wrong," is the law of the case).

Ann. § 62–1–308(d) (Supp.1997); *In re Howard,* 315 S.C. 356, 434 S.E.2d 254.

## LAW/ANALYSIS

### I. EXISTENCE OF UNDUE INFLUENCE

■ Calvin first contends the circuit court erred in affirming the probate judge's finding the 1994 will was void on the ground of undue influence. We disagree.

"Proponents of a will have the burden of establishing prima facie proof of due execution in all cases and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake, revocation, or lack of testamentary intent or capacity." S.C.Code Ann. § 62–3–407 (Supp.1997). *See also Hanahan v. Simpson,* 326 S.C. 140, 485 S.E.2d 903 (1997) (the contestant has the burden of proof as to any alleged invalidity once due execution of the challenged will is proved).

■ In order to void a will on the ground of undue influence, the undue influence must destroy free agency and prevent the maker's exercise of judgment and free choice. *Todd v. Woodard,* 297 S.C. 264, 376 S.E.2d 276 (1989). "Undue influence, the influence necessary to void a will, 'must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment; it must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in support of a testamentary act; [further, there must be proof that the act was obtained by this coercion;] by importunity which could not be resisted; that it was done merely for the sake of peace; so that the motive was tantamount to force and fear.'" *Calhoun v. Calhoun,* 277 S.C. 527, 532, 290 S.E.2d 415, 418 (1982) (quoting *Floyd v. Floyd,* 3 Strob. 44, 34 S.C.L. 44 (1848)). A mere showing of opportunity or motive does not create an issue of fact regarding undue influence. *Todd,* 297 S.C. 264, 376 S.E.2d 276.

"In cases where allegations of undue influence have been successful, there has been evidence of threats, force, restricted visitation, or an existing fiduciary relationship at the time of or

before the will's execution." *Hembree v. Estate of Hembree*, 311 S.C. 192, 196, 428 S.E.2d 3, 5 (Ct.App.1993) (citing *Byrd v. Byrd*, 279 S.C. 425, 308 S.E.2d 788 (1983) and *Moorer v. Bull*, 212 S.C. 146, 46 S.E.2d 681 (1948)).

■ Our supreme court has recognized that "by the very nature of the case, the evidence of undue influence will be mainly circumstantial. It is not usually exercised openly so it can be directly proved." *Byrd v. Byrd*, 279 S.C. 425, 427, 308 S.E.2d 788, 789 (1983). However, the circumstantial evidence must point unmistakenly and convincingly to the fact that the mind of the maker was subject to that of some other person so the will is that of the latter and not of the former. *Id.*

Although Mrs. Cumbee had access to a telephone and visitors, Ruth and Calvin monitored her conversations with a baby monitor. Calvin admitted he told his wife to listen in on conversations his mother had with his brother Melvin and Melvin's wife, Maxine. Mrs. Cumbee felt uneasy talking around the monitor. To avoid Ruth hearing her conversations, Mrs. Cumbee developed hand signals to communicate with her visitors.

The record additionally contains evidence of threats and fear. Betty Cumbee, Calvin's daughter-in-law, testified Mrs. Cumbee did not like living with Calvin and Ruth but felt she had no choice. She was afraid of being placed in a nursing home. Betty recalled Mrs. Cumbee telling her, "If I don't do what they say they'll put me in a nursing home." Calvin admitted his mother had told him that "she was afraid of having to go to a nursing home."

■ Further, Calvin had a fiduciary relationship with his mother. "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *Brown v. Pearson*, 326 S.C. 409, 422, 483 S.E.2d 477, 484 (Ct.App.1997) (quoting *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 358 S.E.2d 150 (Ct.App.1987)). Calvin had his mother's power of attorney. He also managed all of her finances, including keeping her checkbook. Although Calvin wrote checks for his mother, he could not produce the check register at trial. The circuit court found a fiduciary

relationship created a presumption of undue influence. *See Byrd,* 279 S.C. 425, 308 S.E.2d 788; *Moorer v. Bull,* 212 S.C. 146, 46 S.E.2d 681 (1948); *Hembree,* 311 S.C. 192, 428 S.E.2d 3.

The evidence also indicates Calvin utilized undue influence to compel Mrs. Cumbee to execute the 1994 will, and he controlled the execution of the will. Mrs. Cumbee gave her directions for the new will to her attorney's office by telephone. Because Mrs. Cumbee was confined to the house, Calvin picked up the will from the attorney's office for the execution. Calvin selected the witnesses for the execution of the will. Two of the witnesses, John and Barbara Bihlear, rented Mrs. Cumbee's house from Calvin. The witnesses testified Mrs. Cumbee was aware that she was executing a will. However, they stated the will was not read in their presence and Mrs. Cumbee did not discuss the contents of the will. Calvin did not give a copy of the will to his mother. Instead, he put the original in a safety deposit box.

When Mrs. Cumbee was in the hospital after executing the 1994 will, Ruth stayed with her constantly to prevent her from being alone with Mrs. Cumbee's son Melvin. According to Betty Cumbee, Ruth was afraid Melvin would ask Mrs. Cumbee about the will and she did not want Mrs. Cumbee to talk about the new will and its provisions with Melvin.

There is evidence which indicates the disposition of Mrs. Cumbee's estate in the 1994 will did not comport with her expressed intentions. Five months before she died, Mrs. Cumbee told Myrtle Wright, her sister-in-law and best friend, that she wanted her children to sell her belongings after she died and to divide the proceeds equally. Mrs. Cumbee stated she did not think it would be right to leave her property to one child when she had nine children. Mrs. Cumbee told Wright that Calvin had asked her to give him the home she owned, but she refused. Calvin then asked her to sell him the home, but she again refused. Mrs. Cumbee executed the 1994 will in February of 1994, approximately seven months before her death in September 1994 and, thus, two months before this conversation.

Calvin argues the circuit court erred in disregarding the testimony of the subscribing witnesses to the will and the legal

secretary who spoke to Mrs. Cumbee two weeks before the will was executed. However, based on our limited standard of review, we hold the record presents sufficient evidence to support the lower court's finding of undue influence.

## II. OPPORTUNITY TO CHANGE THE 1994 WILL

Calvin next argues the lower court erred in voiding the 1994 will on the ground of undue influence because Mrs. Cumbee had the unhampered opportunity to change her will after the alleged exercise of undue influence. He cites *Smith v. Whetstone*, 209 S.C. 78, 39 S.E.2d 127 (1946) and *Hembree*, 311 S.C. 192, 428 S.E.2d 3, for the proposition that where the decedent had an unhampered opportunity to revoke the will, but made no change in it, the testimony of undue influence is generally destroyed.

This issue was neither raised to nor ruled on by the probate judge. Accordingly, it is not preserved for review by this Court. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997) (issue may not be raised for the first time on appeal); *Collins v. Pilgrim Health & Life Ins. Co.*, 201 S.C. 166, 21 S.E.2d 576 (1942) (issue should be raised in trial court and on appeal to be properly preserved for review).

## III. REVIVAL OF 1987 WILL

Calvin alleges the circuit judge erred in holding S.C.Code Ann. § 62–2–508 (1987) of the Probate Code does not apply to the case *sub judice*. This statute deals with revival of a former will upon the revocation of a subsequent will. Under Calvin's reliance on the statute, the third (1994) will's revocation of the second (1991) will would be presumed not to "revive" the first (1987) will.[5] We disagree.

Initially, it is questionable whether the issue was preserved for appeal. Calvin failed to challenge the probate judge's enforcement of the 1987 will on this basis with a Rule 59(e), SCRCP motion. *See In re Estate of Timmerman*, 331 S.C. 455, 502 S.E.2d 920 (Ct.App. 1998) (when probate judge grants certain relief not previously contemplated, the aggrieved party

---

**5.** The first (1987) will was expressly revoked by language contained in the second (1991) will; the second (1991) will was, in turn, expressly revoked by the third (1994) will.

must move, pursuant to Rule 59, SCRCP, to alter or amend the judgment in order to preserve 'the issue for appeal).

In any event, there was no reversible error. Under the Probate Code, the revocation of a subsequent will by either a physical act or a writing such as a third will is presumed not to revive a former will. S.C.Code Ann. § 62–2–508(a) & (b) (1987). The circuit judge generally noted that section 62–2–508 applies only to revival of a former will in cases where a subsequent will has been revoked by a physical act. However, section 62–2–508 is divided into two sections, one dealing with revocation by a physical act *and* the other governing revocation of a subsequent will by a writing.[6] Nevertheless, the case before us does not present the issue of whether the 1987 will was revived by revocation of a subsequent will with a third will. Rather, the probate judge held the 1991 and 1994 wills were vitiated by undue influence and were therefore void *ab initio;* the judge did not find these wills were revoked by a subsequent writing. The circuit court affirmed these findings. Section 62–2–508 clearly is not applicable. Consequently, there was no error in refusing to apply the statute's presumption against revival.

## IV. INCLUSION OF $107,000 IN THE ESTATE

Calvin finally argues the court below erred by including in his mother's estate $107,000 that was held in his individual account. We disagree.

Mrs. Cumbee received over $100,000 when her husband passed away. Calvin originally placed some money from the estate into a joint money market account held in his and his mother's names; some of the money was in a certificate of deposit, which continued to earn interest. Around a year after his father died, Calvin changed the account to be in only his name. He reported the interest from the account on his tax returns. Calvin explained he transferred his mother's

---

**6.** Subsection (b) provides as follows: "The revocation by a third will ... of a will made subsequent to a former will, where the subsequent will would have revoked the former will if the subsequent will had remained effective at the death of the testator, shall not revive or make effective any former will except to the extent it appears from the terms of the third will that the testator intended the former will to take effect." S.C.Code Ann. § 62–2–508(b) (1987).

money from the joint account to his individual account to "hide" the money from Medicaid. Without equivocation, Calvin admitted the money he held in his individual account was his mother's money. Therefore, he cannot complain it was error to include the funds in his mother's estate when even he acknowledges the money belonged to his mother.

## CONCLUSION

We hold the evidence supports the finding Mrs. Cumbee's 1994 will was voided by undue influence. The probate of the 1987 will of Mrs. Cumbee and the inclusion in her estate of the funds held by her son Calvin is

**AFFIRMED.**

HOWELL, C.J., and STILWELL, J., concur.