# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Glenn Gunnells, Individually and as the Personal
Representative of The Estate of Helen B. Gunnells,
Appellant,

v.

Cathy G. Harkness, Respondent.

Appellate Case No. 2017-001131

Appeal From Charleston County
Roger M. Young, Sr., Circuit Court Judge

Opinion No. 5716
Heard June 5, 2019 – Filed April 1, 2020

**AFFIRMED**

Robert Bratton Varnado, of Brown & Varnado, LLC, of
Mt. Pleasant; and Alexis Wimberly McCumber, of
Anastopoulo Law Firm, LLC, of Charleston, both for
Appellant.

Donald Higgins Howe, of Law Offices of Donald H.
Howe, LLC, of Charleston; Michelle Jennifer Weil, of
Michelle J. Weil, Attorney at Law, LLC, of Summerville;
and Julie C. Jackson-Bailey, of Richmond, Virginia, all
for Respondent.

**WILLIAMS, J.:**  In this probate dispute, Glenn Gunnells appeals the circuit
court's order affirming (1) the probate court's order granting Cathy G. Harkness's

petition to set aside Helen B. Gunnells's (Testatrix) last will and testament dated July 3, 2013 (2013 Will), based on a finding of undue influence and (2) the probate court's order denying Glenn's motion for reconsideration pursuant to Rule 59(e), SCRCP.  We affirm.

## FACTS/PROCEDURAL HISTORY

Testatrix and her husband, Aiken Arden Gunnells (Arden), lived in Charleston and were married for many years.  The pair had three children during their marriage: Glenn, Cathy, and Belinda G. Davis (Belinda).[1]  On November 7, 2006, Testatrix executed a last will and testament (2006 Will) devising her estate to Arden if he survived her and then to her three children in equal shares.  In March 2013, Glenn moved in with Testatrix and Arden to help care for them.  Arden died on June 8, 2013.

Less than a month after Arden's death, Testatrix executed the 2013 Will.  On Glenn's suggestion, Testatrix hired attorney Susan Klok to prepare the 2013 Will.  The 2013 Will left Testatrix's entire estate to Glenn.  Glenn continued to live with Testatrix until she died on February 7, 2014.  Less than a month later, Glenn applied for informal probate of the 2013 Will.  On July 28, 2014, Cathy filed a petition opposing the probate of the 2013 Will, arguing the 2013 Will was the product of undue influence.[2]  The probate court held a hearing from March 1–2, 2016.

At the hearing, the probate court heard testimony from Jack Brantley (Testatrix's brother), Belinda, Cathy, Klok, Annie Voytko (Klok's assistant), Glenn, and Sharon Lee Wechter and Jill Susan Costa (Testatrix's physical therapists).  The probate court additionally considered the video-taped deposition of ninety-two-year-old Helen Carroll, Testatrix's close friend for over forty years, and excerpts from the deposition of Dr. Rhonda Chanson, Testatrix's primary care physician.

By order filed May 12, 2016, the probate court found that the 2013 Will was the product of undue influence, voiding the 2013 Will and reinstating the 2006 Will.

---

[1] Belinda was not a party to these proceedings, but she was present and testified at the probate hearing.

[2] Cathy also sought to have Glenn removed as the personal representative of Testatrix's estate.  The probate court has held this petition in abeyance pending the outcome of this matter.

Glenn filed a Rule 59(e), SCRCP, motion to reconsider, which the probate court denied by order dated August 25, 2016.

Glenn subsequently appealed the probate court's decision to the circuit court. Following a hearing, the circuit court affirmed the probate court's orders, issuing an order filed April 11, 2017, in which it found the evidence supported the probate court's findings. This appeal followed.

## ISSUES ON APPEAL

I.  Did the circuit court err in finding the 2013 Will was the product of undue influence?

II. Did the circuit court err in its consideration of Dr. Chanson's testimony and in finding Glenn withheld medication from Testatrix based on this testimony?

III. Did the circuit court err in admitting Carroll's deposition testimony?

IV. Did the circuit court err in affirming the probate court's denial of Glenn's motion for reconsideration?

## STANDARD OF REVIEW

"An action to contest a will is an action at law." *In re Estate of Cumbee*, 333 S.C. 664, 670, 511 S.E.2d 390, 393 (Ct. App. 1999). "Under the Probate Code, a circuit court hearing an appeal from the probate court must apply the same rules of law as an appellate court would apply on appeal." *Id.*; *see also* S.C. Code Ann. § 62-1-308(i) (Supp. 2019) ("The circuit court, court of appeals, or Supreme Court shall hear and determine the appeal according to the rules of law. The hearing must be strictly on appeal and no new evidence may be presented."). Therefore, the circuit court and this court cannot disturb the probate court's findings of fact "unless a review of the record discloses there is no evidence to support them." *Cumbee*, 333 S.C. at 670, 511 S.E.2d at 393.

## LAW/ANALYSIS

### I.    Undue Influence

Glenn argues the circuit court erred in finding the 2013 Will was the product of undue influence. We disagree.

A contestant of a will challenging the validity of the will on the basis of undue influence bears the burden of proof and must present evidence showing the testatrix's will was overborne by that of the influencer or someone acting on his behalf. *See Macaulay v. Wachovia Bank of S.C., N.A.*, 351 S.C. 287, 295, 299, 569 S.E.2d 371, 375–76, 378 (Ct. App. 2002); *see also* S.C. Code Ann. § 62-3-407 (Supp. 2019) ("Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake, revocation, or lack of testamentary intent or capacity."). The undue influence necessary to invalidate a will must reach a level of force and coercion, not "the influence of affection and attachment" nor "the mere desire of gratifying the wishes of another." *Cumbee*, 333 S.C. at 671, 511 S.E.2d at 394 (quoting *Calhoun v. Calhoun*, 277 S.C. 527, 532, 290 S.E.2d 415, 418 (1982)). However, our courts have recognized that "the evidence of undue influence will be mainly circumstantial" because undue influence is often exercised behind closed doors, preventing any direct proof. *Calhoun*, 277 S.C. at 530, 290 S.E.2d at 417. Successful will contests asserting undue influence often include evidence of threats, force, restricted visitation, or an existing fiduciary relationship. *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 333 (2003).

"A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *Cumbee*, 333 S.C. at 672, 511 S.E.2d at 394 (quoting *Brown v. Pearson*, 326 S.C. 409, 422, 483 S.E.2d 477, 484 (Ct. App. 1997)). The existence of a fiduciary relationship between the influencer and the testatrix creates a rebuttable presumption of undue influence. *Hairston v. McMillan*, 387 S.C. 439, 447, 692 S.E.2d 549, 553 (Ct. App. 2010). "[A]lthough the proponents of the will must present evidence in rebuttal [when a fiduciary relationship exists], they do not have to affirmatively disprove the existence of undue influence. Instead, the contestants of the will still retain the ultimate burden of proof to invalidate the will." *Howard v. Nasser*, 364 S.C. 279, 288, 613 S.E.2d 64, 68–69 (Ct. App. 2005).

In the instant case, we find the circuit court did not err in finding a fiduciary relationship existed between Glenn and Testatrix to raise a presumption of undue influence. *See McMillan*, 387 S.C. at 447, 692 S.E.2d at 553 ("The existence of a fiduciary relationship between a testator and beneficiary raises a presumption of undue influence."). Glenn's possession of Testatrix's power of attorney created this

relationship. *See id.* (finding a beneficiary's possession of a testator's power of attorney created a fiduciary relationship); *Cumbee*, 333 S.C. at 672, 511 S.E.2d at 394 (finding a presumption of undue influence existed when the son had a fiduciary relationship with his mother because he was her power of attorney and managed all of her finances). Glenn also revealed that he changed Testatrix's bank accounts to include his own name after Arden died, further evidencing the existence of a fiduciary relationship between himself and Testatrix. However, contrary to the probate court's finding, we find Glenn presented sufficient evidence to rebut this presumption. *See McMillan*, 387 S.C. at 447, 692 S.E.2d at 553 ("If evidence of [a fiduciary] relationship is presented, the proponents of the will must offer rebuttal evidence."); *Howard*, 364 S.C. at 288, 613 S.E.2d at 68–69 ("[A]lthough the proponents of the will must present evidence in rebuttal [when a fiduciary relationship exists], they do not have to affirmatively disprove the existence of undue influence. Instead, the contestants of the will still retain the ultimate burden of proof to invalidate the will."). Klok, the attorney who prepared the 2013 Will, testified Testatrix assured her that Testatrix did not feel any pressure about changing her will to no longer include her daughters as beneficiaries. Klok recalled Testatrix was "very frail physically, but mentally, she seemed to know what she wanted" and further stated Testatrix was "pretty clear, very adamant" about the change. According to Klok, Testatrix explicitly told her that the change in the will was more about not wanting to leave anything to her daughters rather than a desire to leave everything to Glenn. Voytko, Klok's assistant, testified consistently with Klok. Further, both Klok and Voytko were adamant that the only people present for the meeting to change the will were the two of them and Testatrix. Additionally, Wechter and Costa, Testatrix's physical therapists, both wrote letters on Glenn's behalf in which they both described Glenn's care for his mother and Testatrix's anger towards Cathy and Belinda. Costa mentioned that Testatrix "only trusted Glenn when it came to her children." Based on this evidence, we find Glenn sufficiently rebutted the presumption of undue influence that arose due to his fiduciary relationship with Testatrix.

Nevertheless, we ultimately find the record contains sufficient evidence to support the circuit court's finding that the 2013 Will was a product of undue influence. First, we note the disposition of Testatrix's estate in the 2013 Will, which awarded the entire estate to Glenn, was significantly different from the disposition in her 2006 Will, which awarded Testatrix's estate to Arden, if he survived her, then to each of her children in equal shares. *See Byrd v. Byrd*, 279 S.C. 425, 430, 308 S.E.2d 788, 791 (1983) (noting that evidence of undue influence can include an unnatural disposition that makes the influencer the chief beneficiary of the will).

Second, Brantley, Testatrix's brother, and Carroll, Testatrix's close friend, both presented evidence that Glenn restricted Testatrix's communication and visitation. *See Russell*, 353 S.C. at 217, 578 S.E.2d at 333 (noting that courts have set aside wills for undue influence when contestants presented evidence of threats, force, *restricted visitation*, or an existing fiduciary relationship). Both Brantley and Carroll testified Testatrix stopped calling them, rarely answered the phone, and was "very hesitant" to talk after Glenn moved into Testatrix's home. When Brantley visited Testatrix after Arden's death, he noted Glenn had converted the downstairs living room into his bedroom and installed a video surveillance system with cameras monitoring different parts of the property. Brantley noted that Testatrix seemed reluctant to respond to his comments or questions if Glenn was present. Brantley further testified he asked Testatrix to call Cathy because she was having leg surgery, but Testatrix responded that she would have to ask Glenn because Glenn did not like for her to talk to Cathy. Brantley stated he spoke with Glenn about asking Cathy and Belinda to help with Testatrix's care, but Glenn told him he "did not want them over there." Additionally, Brantley sent a letter "To Whom It May Concern" the day after Glenn applied for probate of the 2013 Will, expressing his concerns over how Testatrix's communication and demeanor changed, especially around Glenn. Carroll indicated that when she called Testatrix's house, Glenn would not let her speak to Testatrix if he answered the phone. Carroll recalled Testatrix telling her that she could not talk on the phone like she did before Arden died. Testatrix also expressed to Carroll that she wanted to visit her sister in Georgia, but Glenn would not take her.[3]

Additionally, Carroll testified regarding the creation of the 2013 Will. Although Carroll initially testified in her deposition that she never had any conversation with Testatrix about a will, Carroll later changed her deposition testimony after she refreshed her memory by reading a statement she had previously signed. In her revised testimony, Carroll stated Testatrix informed her that Glenn told Testatrix that she had to make a new will, and Testatrix executed the new will even though she did not want to. Carroll alleged Testatrix told her, "[Carroll], I had no choice." *See Hembree v. Estate of Hembree*, 311 S.C. 192, 196, 428 S.E.2d 3, 5 (Ct. App. 1993) ("Circumstances must unmistakably and convincingly point to the substitution of another's will for that of the testat[rix]."). Carroll further indicated Testatrix "clammed up" when Glenn came home during this conversation.

---

[3] The evidence in the record indicated Testatrix was in a wheelchair and, thus, completely reliant on Glenn for her transportation.

Moreover, Belinda and Cathy both testified to Glenn's actions restricting Testatrix's communication and visitation with others. Belinda testified she noticed this behavior prior to Arden's death, stating Glenn never notified her of Arden's failing health.[4] Belinda testified about an email she received from Glenn after she put her name and Cathy's name on the hospital's visitation list for Arden. The email read as follows:

> LET IT BE KNOWN, NOTHING WILL BE SIGNED
> [or] INITIALIZE[D] TILL I LOOK AT IT!!! SO LET IT
> BE WRITTEN SO LET IT BE DONE!! ALL [H]AS
> BEEN [D]ONE AND NOTIFIED!!!!!!!!!!!!!!!!!

Belinda further recalled that when she went to Testatrix's house to retrieve Arden's death certificate, Glenn had placed it in a plastic bag, which he hung on the front door. Belinda explained she knocked on the door and a "woman [she] had never seen before" opened the door; Belinda asked to see Testatrix, and the woman responded that she could not see Testatrix because Testatrix was doing physical therapy. Thereafter, an argument ensued between Glenn and Belinda, and Glenn threatened to call the police. Cathy also recalled this incident.

Cathy recalled Testatrix became distant, would not answer the phone, and was reluctant to open the door after Glenn moved into the home. Cathy testified she used her key to get into Testatrix's house until Glenn changed the locks and told Cathy she was no longer welcome unless he was present. Cathy explained she tried to call Testatrix multiple times but Glenn would answer, tell her she was not allowed to speak to Testatrix, "laugh[,] and hang up." Cathy averred Glenn threatened to have her arrested for harassment if she went to see Testatrix. Cathy further alleged that on the day Testatrix passed away, Glenn told her "you're going to be surprised [with] what's in the new will. I have everything."

Based on the foregoing, we find evidence supported the probate court's finding that Testatrix's execution of the 2013 Will was a product of Glenn's undue influence.[5] Therefore, the circuit court properly affirmed the orders of the probate court.

---

[4] Belinda moved to Hawaii in October 2012 to provide childcare for her grandchild before returning to Charleston in June 2013, approximately one week before Arden died.

[5] We additionally note the unusual circumstances surrounding the execution of the 2013 Will. Testatrix had never met Klok before their meeting to discuss executing the 2013 Will on July 3, 2013—less than month after Arden died. However, Klok

## II.    Dr. Chanson's Testimony

Glenn argues the circuit court erred in affirming the probate court because the probate court improperly "cherry-picked" statements from Dr. Chanson's deposition testimony in making its factual findings in support of its finding of undue influence.  Glenn also contends the probate court erred in finding Glenn withheld medication from Testatrix based on Dr. Chanson's testimony.  We disagree.

We find Glenn's initial contention is without merit.  "In a law case tried without a jury, questions regarding the credibility and *the weight of evidence* are *exclusively* for the trial judge." *In re Estate of Anderson*, 381 S.C. 568, 573, 674 S.E.2d 176, 179 (Ct. App. 2009) (quoting *Golini v. Bolton*, 326 S.C. 333, 342, 482 S.E.2d 784, 789 (Ct. App. 1997) (emphasis added)).  Although the probate court referenced specific evidence in its order to support its finding of undue influence, nothing in the record suggests the probate court failed to consider and weigh all of the evidence presented or that the evidence failed to support its findings.  Therefore, like the circuit court, we are bound by the probate court's factual findings.  *See Cumbee*, 333 S.C. at 670, 511 S.E.2d at 393 (providing that in an action at law, the circuit court and this court cannot disturb the probate court's findings of fact "unless a review of the record discloses there is no evidence to support them").

As to Glenn's contention that the probate court improperly found he withheld Testatrix's medication, we note Glenn misconstrues the probate court's finding.  In

_____

was Glenn's attorney for the closing on his house on June 7, 2013, twenty-two days before Testatrix's meeting with Klok.  Glenn stated Testatrix decided to use Klok as the attorney to revise the 2006 Will based on Glenn's suggestion.  Klok only met with Testatrix one time, during which the 2013 was executed, despite her normal procedure, which consisted of an initial meeting to discuss pricing, take down information, and set goals followed by another appointment several weeks later to execute the will.  Klok confirmed Glenn called her to set up the July 3 appointment and drove Testatrix to the appointment.  According to Klok, she asked Glenn to leave before she discussed changing the will with Testatrix, and Glenn stayed outside the office for the duration of the meeting.  After executing the new will, Klok gave the 2013 Will to Testatrix in an unsealed envelope.  Additionally, Testatrix met with Dr. Chanson within hours of executing the 2013 Will, and Dr. Chanson recalled Testatrix was distraught, visibly upset, and crying over Arden's death during her visit.

its order, the probate court provided a detailed evaluation of the evidence presented and further listed evidentiary examples to illustrate its finding that Glenn's assertions regarding the family dynamics and the execution of the 2013 Will lacked credibility. Included in those examples was the following statement by the probate court:

> Additionally troubling is [Glenn]'s failure to provide prescribed medications as directed to [Testatrix], particularly Remeron, which was to improve [Testatrix]'s dementia. It appears this medication was not properly administered for the last several months of [Testatrix's] life. If the Testatrix was "weak minded," her ability to change or alter the [2013 Will], had she so desired, would have been hampered.

We find the evidence supports a finding that Testatrix was not receiving her prescribed medication in the final six months of her life and Glenn supervised her medical care by administering her medications and transporting her to and from appointments.[6] *See Anderson*, 381 S.C. at 573, 674 S.E.2d at 179 ("In a law case tried without a jury, questions regarding the credibility and the weight of evidence are exclusively for the trial judge." (quoting *Golini*, 326 S.C at 342, 482 S.E.2d at 789)). Further, regardless of whether the probate court erred in making this finding, we find the record is replete with evidence to support the overall finding that the 2013 Will was a product of undue influence. Accordingly, we find the circuit court did not err in affirming the orders of the probate court.

## III.  Carroll's Testimony

---

[6] Chanson testified: (1) Testatrix's prescription for potassium was never filled and (2) there was a long delay between the first time Dr. Chanson prescribed Remeron for Testatrix's dementia and when it was ultimately filled. Additionally, Dr. Chanson testified that there was a question of whether or not Testatrix had been taking her prescribed Remeron when she met with Testatrix on September 30, 2013, a little over four months before Testatrix died. Dr. Chanson confirmed that she strongly recommended Testatrix restart her Remeron during that visit. Moreover, Wechter's letter written on Glenn's behalf indicated Glenn provided Testatrix with her medications and was her sole means of transportation to all of her medical appointments.

Glenn argues the probate court erred in admitting Carroll's deposition testimony. Glenn, specifically, takes exception to Carroll's assertion that Testatrix stated she had no choice but to change the will.

We find Glenn failed to preserve this issue for appellate review. During Carroll's deposition, Glenn objected to the document Carroll used to refresh her memory, but he never objected to her testimony as a result of her refreshed memory. Further, when Carroll's deposition was introduced at the probate hearing, Glenn clarified he was objecting to the document Carroll used to refresh her memory and not the resulting testimony. Because Glenn did not object to Carroll's testimony regarding her conversation with Testatrix, we find Glenn has failed to preserve this issue for appellate review. *See Webb v. CSX Transp., Inc.*, 364 S.C. 639, 655, 615 S.E.2d 440, 449 (2005) (finding a contemporaneous objection is necessary to properly preserve an issue for appeal); *see also State v. Broome*, 268 S.C. 99, 103 n.1, 232 S.E.2d 324, 325 n.1 (1977) ("South Carolina is in accord with the majority rule that . . . it is the recollection of the witness and not the memorandum that is in evidence . . . .").

## IV.    Motion to Reconsider

Finally, Glenn asserts the circuit court erred in affirming the probate court's denial of his motion to reconsider because the evidence did not support the probate court's findings. For the reasons discussed in the prior sections of this opinion, we find Glenn's argument is without merit. Accordingly, we find the circuit court did not err in affirming the probate court's order denying Glenn's Rule 59(e), SCRCP, motion.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**

**GEATHERS and HILL, JJ., concur.**