**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Dorthea Ryles, Appellant,

v.

Leon Ryles, Willie N. Ryles, and Theresa Williams, Respondents.

IN RE:
The Estate of Edith W. Ryles,
Estate File: 2018-Es-21-00899

Appellate Case No. 2023-001842

———————

Appeal From Florence County
Clifton Newman, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-362
Heard October 7, 2025 – Filed October 29, 2025

———————

**AFFIRMED AS MODIFIED**

———————

James Ross Snell, Jr., of Law Office Of James R. Snell, Jr., LLC, of Lexington, for Appellant.

Brown W. Johnson, of Clarke Johnson Peterson & McLean, PA, of Florence, for Respondents.

———————

**PER CURIAM:**  Dorthea Ryles appeals orders of the probate and circuit courts setting aside the will and power of attorney (POA) of her mother, Edith Ryles, due to a lack of testamentary capacity and undue influence and finding she breached her fiduciary duty to Edith.[1]  On appeal, Dorthea argues the circuit court erred by (1) allowing lay witnesses to testify regarding Edith's capacity at the time of the signing of the will and POA; (2) finding Edith lacked the testamentary capacity to execute the will and POA; (3) finding she exercised undue influence on Edith; and (4) finding she breached her fiduciary duty to Edith and requiring her to reimburse Edith's estate (the Estate) for damages stemming from the breach.  We affirm as modified pursuant to Rule 220(b), SCACR, and the following authorities:

1. We hold the probate and circuit courts correctly found undue influence in the creation of Edith's will such that the will should be voided.  *See In re Est. of Cumbee*, 333 S.C. 664, 670, 511 S.E.2d 390, 393 (Ct. App. 1999) ("An action to contest a will is an action at law."); *id.* ("If the proceeding in the probate court is in the nature of an action at law, the circuit court and this [c]ourt may not disturb the probate judge's findings of fact unless a review of the record discloses there is no evidence to support them.").  Dorthea was in a fiduciary relationship with Edith at the time the will was created, as she held Edith's POA, which created a rebuttable presumption of undue influence.  *Hairston v. McMillan*, 387 S.C. 439, 447, 692 S.E.2d 549, 553 (Ct. App. 2010) ("The existence of a fiduciary relationship between a testator and beneficiary raises a presumption of undue influence."); *Howard v. Nasser*, 364 S.C. 279, 288, 613 S.E.2d 64, 68 (Ct. App. 2005) ("[I]f the contestants of a duly executed will provide evidence that a confidential/fiduciary relationship existed sufficient to raise the presumption, the proponents of the will must offer evidence in rebuttal.").  Dorthea failed to offer sufficient evidence to rebut the presumption.

The POA was executed in June 2016, approximately two months after Edith was found disoriented in the street in front of her house.[2]  Testimony at trial established

---

[1] Because many of the parties and witnesses are related and share the same last name, we will use first names as identifiers.  We refer to the respondents in this action—Willie, Leon, and Theresa—collectively, as Siblings.

[2] The question of the validity of the POA itself is moot since Edith is now deceased.  However, we discuss the circumstances surrounding the execution and use of the POA because they are relevant to the question of the validity of the will, which was executed a year and a half later in December 2017.  *See Franklin v. Chavis*, 371 S.C. 527, 535 n.7, 640 S.E.2d 873, 877 n.7 (2007) ("Regarding the power of attorney, it is no longer valid since [the testatrix] is deceased . . . . [T]here

that by 2016, Edith was physically infirm to the point that she need help with day-to-day activities, including managing her finances and paying bills, showering, cooking, and getting dressed, and that she could no longer drive; further, Willie testified Edith would sign anything that was put in front of her by a family member. Dorthea took her mother to the appointments to execute both the POA and the will without informing Siblings, who were Edith's primary caregivers, and the will was prepared by non-lawyer employees of Hawkins Tax Service, both of whom invoked their Fifth Amendment right against self-incrimination when called to testify about the circumstances surrounding its execution. Further, Dorthea repeatedly exercised her powers under the POA improperly, gifting herself thousands of dollars from the Estate and ultimately spending a total of $212,866.12. Although it appears from the record that some of the money went to maintaining at least one of the Estate's properties, Dorthea did not provide any receipts or documents to corroborate those amounts, and much of the money she testified was spent on "taxes" was withdrawn in cash from Edith's accounts with no records to show to whom it was paid, for what, or when. Moreover, Dorthea admitted to spending Edith's money to redeem a non-Estate property, as well as for personal expenses like groceries, manicures, and attending a charity event at Yankee Stadium. *See Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 333 (2003) ("Undue influence is demonstrated where the will of the influencer is substituted for the will of the maker."); *Calhoun v. Calhoun*, 277 S.C. 527, 530, 290 S.E.2d 415, 417 (1982) ("[B]y the very nature of the case, the evidence of undue influence will be mainly circumstantial."); *id.* ("In determining whether the contestants sustained [the] burden [of proof], the evidence has to be viewed in the light most favorable to the contestants."); *Cumbee*, 333 S.C. at 670, 511 S.E.2d at 393 ("[T]his [c]ourt may not disturb the [trial] judge's findings of fact unless a review of the record discloses there is no evidence to support them."); *see also Byrd v. Byrd*, 279 S.C. 425, 427, 308 S.E.2d 788, 789 (1983) (voiding a will on the basis of undue influence when the "evidence establishe[d] the testator was infirm, both mentally and physically, prior to and contemporaneously with the execution of the will . . . and, consequently, particularly susceptible to influence").[3]

is nothing to be achieved by voiding the power of attorney now."); *Wayne's Auto. Ctr., Inc. v. S.C. Dep't of Pub. Safety*, 431 S.C. 465, 475, 848 S.E.2d 56, 62 (Ct. App. 2020) ("An appellate court will not pass judgment on moot and academic questions; it will not adjudicate a matter when no actual controversy capable of specific relief exists." (quoting *Sloan v. Greenville County*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009))).

[3] We decline to reach the issue of testamentary capacity, as our finding of undue influence is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335

2. We hold the probate and circuit courts correctly found Dorthea breached her fiduciary duty to Edith and must repay $212,866.12 in damages. *See Bennett v. Est. of King*, 436 S.C. 614, 621-22, 875 S.E.2d 46, 50 (2022) ("[A]n action for breach of fiduciary duty is either an action at law or in equity depending on the remedy sought."); *Verenes v. Alvanos*, 387 S.C. 11, 17, 690 S.E.2d 771, 773 (2010) ("Restitution and disgorgement are equitable remedies."); *Greer v. Spartanburg Technical College*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct. App. 1999) ("In reviewing a proceeding in equity, this court may find facts based on its own view of the preponderance of the evidence."); *id.* (explaining, however, that "[t]his broad scope of review does not require this court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses").

Dorthea conceded that she was in a fiduciary relationship with Edith via the POA, that she breached her duty by spending Edith's funds for personal use, that she had a duty to "keep a record of all receipts, disbursement[s], and transactions[,]" and that she "was unable to account for the spending" with documentation. Further, Dorthea failed to respond to Siblings' requests to admit to the accuracy of various transactions from Edith's accounts totaling $212,866.12, and the probate court deemed them admitted. At trial, she offered only her testimony as to the purpose of various withdrawals and transactions. Because Dorthea failed to provide any records or receipts to corroborate her assertions, we cannot determine how much of the money, if any, was properly spent. Accordingly, we affirm the damages amount of $212,866.12; however, the probate court's order stated the damages should be repaid to Siblings, rather than the Estate. We therefore modify that portion of the order to clarify that Dorthea must repay the $212,866.12 to the Estate.[4] *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335-36, 732 S.E.2d 166, 173 (2012) ("To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant."); *Moore v. Moore*, 360 S.C. 241, 253, 599 S.E.2d 467, 473 (Ct. App. 2004) ("Damages in an action for breach of a fiduciary duty are those proximately resulting from the wrongful conduct of the defendant.").

**AFFIRMED AS MODIFIED.**

---

S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

[4] At oral argument, Siblings agreed the damages should be repaid to the Estate.

**MCDONALD, HEWITT, and TURNER, JJ., concur.**