21687

Lonnie Lee CALHOUN, Jr., as Executor of the Last Will and Testament of Sam Johnson, Appellant, v. Virginia J. CALHOUN, John Skipper, Robert Johnson and Serena T. Johnson, Executrix of the Estate of Serena J. Tindal, Defendants, of which Virginia J. Calhoun is an Appellant, and John Skipper, Robert Johnson, and Serena T. Johnson, Executrix of the Estate of Serena J. Tindal are Respondents.

(290 S. E. (2d) 415)

*Allen L. Ray,* Conway, *for appellant.*

*J. Reuben Long, Eldridge R. Inman, Robert N. Richardson, Jr.,* and *Kenneth C. Inman,* and *D. W. Green, Jr.,* of *Burroughs, Green & Sasser,* Conway, *for respondents.*

April 7, 1982.

HARWELL, Justice:

Appellant Lonnie Calhoun initiated this case in probate court by offering an instrument dated October 31, 1975, as the Last Will and Testament of Sam Johnson. The probate court admitted the instrument to probate in due or solemn form of law. Respondents appealed to the Court of Common Pleas where the case was tried *de novo* before a jury. The jury found that the will was properly executed according to law and that the testator had sufficient testamentary capacity to make the will; however, the jury found that the testator was under undue influence when he made and signed the will. At the appropriate stages, appellants moved for a directed verdict and a judgment N. O. V. or in the alternative for a new trial. Denying the motions, the trial judge declared the Last Will and Testament null and void. Appellants allege the evidence on undue influence was insufficient to submit to the jury. We agree.

Sam Johnson died testate in Horry County on June 12, 1978, at seventy years of age leaving an estate valued in excess of $360,000. The proponents-appellants of the October 31, 1975 executed will are Lonnie L. Calhoun, Jr., a named executor, and Virginia J. Calhoun, the testator's sister and the prime beneficiary. The contestants-respondents include a son, Robert Johnson, a sister, Serena J. Tindal, and John Skipper, another named executor who was testator's former brother-in-law. Respondent Skipper petitioned the probate court to be removed as executor leaving appellant Lonnie Calhoun as the sole executor. Under the October 1975 will, respondent Johnson received five dollars, respondent Skipper received $5,000.00, and respondent Virginia Calhoun received the residue of testator's estate. Under a previous will respondent

Johnson was bequeathed one dollar, and the residue of the estate was bequeathed equally to appellant Virginia Calhoun, respondents Skipper and Tindal, and another sister who predeceased the testator. The respondents allege that appellant Virginia Calhoun unduly influenced the testator to leave her the greatest portion of the estate.

When the formal execution of a will is admitted or proved, a prima facie case in favor of the will is made out, and the burden is then on the contestants to prove undue influence, incapacity or other basis of invalidation. The contestants continue to bear the burden of proof throughout the will contest. In determining whether the contestants sustained such burden, the evidence has to be viewed in the light ,most favorable to the contestants. *Hellams v. Ross*, 268 S. C. 284, 233 S. E. (2d) 98 (1977); *Havird v. Schissell*, 252 S. C. 404, 166 S. E. (2d) 801 (1969); *Smith v. Whetstone*, 209 S. C. 78, 39 S. E. (2d) 127 (1946). In that light, we proceed to review the evidence relied upon by the respondents to prove the will was the product of undue influence. In addition, we recognize that by the very nature of the case, the evidence of undue influence will be mainly circumstantial. It is not usually exercised openly so that it can be directly proved. However, the circumstances must point unmistakably and convincingly to the fact that the mind of the testator was subjected to that of some other person so that the will is that of the latter and not of the former. *Havird v. Schissell, supra.*

The testator died while confined to the Conway Nursing Center where he had been a patient for approximately three and a half years. It is undisputed that the testator was in a feeble physical condition during the last several years of his life. Respondents allege that on the date of the will's execution, the testator had a weakened mental capacity as well. However, the testator continued to transact his usual business affairs for a period of approximately three years subsequent to the will's execution. Witnesses described him as an honest, shrewd trader and hard worker who used profanity frequently, was gruff at times but who was also generous and kind. Four days prior to the will's execution, the testator's physician concluded that the testator "seems to know what his property is

and what he wants to do with it. He is oriented as to time, place and situation." The unquestionably reputable attorney who drafted the will was satisfied that the testator was sane when he executed the will. During the preparation and drafting of the will, the testator made at least three visits to his attorney's office where his attorney had the opportunity to observe him. At trial, the attorney testified:

Mr. Long, you know as well as I do, I think, that ever since I have been here practicing law there has been talk about contesting Sam's wills, somebody stole his will and somebody stole his papers and one had done this and one had done that and that was the general talk and I knew or had reason to think that we would be in just such a situation as we are right here today.

To assure himself that his client was mentally stable before drafting his will, the attorney contacted his client's physician. After receiving the physician's reassurances, the attorney proceeded to draft the will.

We conclude that the probate court and the jury properly determined that the testator had sufficient testamentary capacity to execute a will on October 31, 1975. However, we conclude there was not sufficient evidence of undue influence to submit to a jury.

We have held that a disposition of property, though ever so capricious or unreasonable, will not be avoided on that ground alone. *Farr v. Thompson,* Cheves 37, 25 S. C. L. 15 (1839). It is not sufficient to condemn and avoid the will to find that there was influence, which affected the testator's disposition of his property. *Smith v. Whetstone, supra.* General influence is not enough. A mere showing of opportunity and even of a motive to exercise undue influence does not justify a submission of that issue to a jury, unless there is additional evidence that such influence was actually utilized. *Mock v. Dowling,* 266 S. C. 274, 222 S. E. (2d) 773 (1976). It is not unlawful for a person, by honest intercessions and modest persuasions, to procure a will to be made in his behalf. *Smith v. Whetstone, supra,* and *Farr v. Thompson, supra.* This Court has also stated that "perhaps no man has

ever existed who was entirely so self-willed as to be wholly uninfluenced by the opinions and wishes of those with whom he was connected." *Woodward v. James,* 3 Strob. 552, 34 S. C. L. 288 (1849).

Undue influence, the influence necessary to void a will, "must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment; it must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in support of a testamentary act; by importunity which could not be resisted; that it was done merely for the sake of peace; so that the motive was tantamount to force and fear." *Floyd v. Floyd,* 3 Strob. 44, 34 S. C. L. 23 (1848). Even though one may have unreasonable likes and dislikes and may act unjustly and even cruelly toward his family in the disposition of his estate, still his will, when legally expressed, must be supported. Therefore, the issue of undue influence should be resolved in the light of proposition that a sane testator has the right to dispose of his property as he chooses. *Harris v. Berry,* 231 S. C. 201, 98 S. E. (2d) 251 (1957).

The respondents attempted to prove that appellant Virginia Calhoun unduly influenced the testator to leave her the greatest portion of his estate. Their evidence consisted of the following: the testator was physically feeble; he was temporarily confused during a period of hospitalization one year before he executed the will; approximately two months after he executed the will, he was disoriented; appellant Virginia Calhoun visited the testator in the nursing home almost everyday; the testator sometimes would "fuss" at her when he was frustrated; the testator once was overheard to say that appellant Virginia Calhoun wanted it all; she asked Dr. Wilson to examine the testator before he made some changes in his will; and she drove the testator to his attorney's office to prepare the will. However, appellant Virginia Calhoun was not present during any of the testator's conferences with his attorney nor was she physically present when the will was executed. She did not have possession of the will after its execution; instead, testator's accountant, close friend, and a subscribing witness, Mr. Holbert, kept it

in his possession. Mr. Holbert testified that on the date of the execution the testator was rational, was not rushed into signing the will, and seemed satisfied with it.

The record is devoid of any evidence that appellant Virginia Calhoun interfered with the making of the will. She may have been interested in the will and may have had more opportunities for persuasion than the respondents. However, this alone does not constitute undue influence.

Additionally, where the testator has had the unhampered opportunity to revoke his will subsequent to the operation of any undue influence upon him, but makes no changes in it, the court generally considers the effect of the testimony bearing upon undue influence in a large measure destroyed. *Smith v. Whetstone, supra.* The evidence reflects that the testator had made several previous wills; therefore, he knew he could alter or revoke this one. The testator continued to transact other business until his death so that had he desired, he could have changed his will.

We conclude that the appellants' motion for a directed verdict should have been granted.

Reversed.

Lewis, C. J., and Littlejohn, Ness and Gregory, JJ., concur.