613 S.E.2d 64

**Leroy J. HOWARD and John Nasser, Appellants,**

v.

**JoAnn NASSER, Joey Nasser, Christina Nasser, Ashley Nasser, Leander Nasser, Mary Kaye Barki and Debbie Coggins, Defendants,**

**of whom JoAnn Nasser is, Respondent.**

**No. 3986.**

Court of Appeals of South Carolina.

Heard Dec. 8, 2004.
Decided May 2, 2005.

---

Ben G. Leaphart, of Greenville, for Appellants.

William Wallace Culp, III, of Greenville, for Respondent.

BEATTY, J.:

In this will contest case, Leroy J. Howard and John Nasser (collectively Appellants) appeal the circuit court's order granting summary judgment for JoAnn Nasser (Respondent), surviving spouse of the decedent Leroy Nasser (Nasser) and personal representative of his estate. Appellants argue the will was invalid because it was the product of undue influence by Respondent. We reverse and remand.

## FACTS

Leroy Howard and John Nasser, the decedent's nephews, brought an action to contest an April 10, 2000 will of Nasser. The will was properly executed and was admitted to probate. Nasser's surviving spouse and second wife, Respondent, was appointed as personal representative of his estate. The will left nothing to either Leroy Howard or John Nasser. Instead, Nasser gave $10,000 to each of his great nieces and the remainder of his estate to Respondent. Additionally, Nasser gave Respondent a power of attorney in October of 1999, specifically revoking a previous power of attorney in favor of Leroy Howard.

Nasser had executed two prior wills. The first will, executed on July 30, 1985, left everything to his first wife and appointed Leroy Howard as his personal representative. After Nasser's first wife died, he executed another will, dated May 19, 1995, that left $50,000 to John Nasser and the residue to Leroy Howard. Leroy Howard was also appointed personal representative of Nasser's estate.

In August of 1998, Nasser was injured in a fall while in Roanoke, Virginia. Leroy Howard drove Nasser back to Greenville, where he was admitted to the St. Francis Hospital System and released in September of 1998. While recovering from his fall, Nasser met Respondent, who was employed as a housekeeper at the hospital. Respondent obtained a divorce from her first husband, from whom she had been separated for approximately ten years, in April of 1999. On May 24,

1999, Respondent and Nasser were married. The will giving rise to this litigation was executed on April 10, 2000. Nasser died as a result of pancreatic cancer and cirrhosis on May 19, 2000.

Appellants filed a petition in probate court, alleging causes of action for undue influence, lack of capacity, fraud, and tortious interference with an expectancy to inherit. Respondent moved for summary judgment on all causes of action.[1] At the hearing on the motion, Appellants argued that Respondent's fiduciary relationship with Nasser, along with other evidence, created a presumption of undue influence. In support of their contention, Appellants offered the following evidence:

(1) Karen R. Hunter, M.D., testified that she diagnosed Nasser with pancreatic cancer in mid-April, 2000. At that time, he appeared ill and was jaundiced, but he did not appear overly distraught about the diagnosis.

(2) Leroy Howard's affidavit stated that during the last year of Nasser's life, his health had deteriorated, and that he believed that Respondent had poisoned his relationship with Nasser, as communication inexplicably broke down and he was not allowed to visit Nasser alone. Additionally, Nasser allegedly withdrew funds in excess of $200,000 from a joint account held by Leroy Howard and Nasser in April of 2000.

(3) John Nasser's affidavit also stated that his communication with Nasser decreased dramatically in late 1999, and that Nasser appeared sickly and confused in April of 2000.

(4) The affidavit of Nicholas M. Franchina, a realtor and friend of the family, stated that in addition to a "dramatic change in [Nasser's] affect, and personality," he noticed on two occasions that someone was listening in on the tele-

1. Pursuant to section 62–1–302 of the South Carolina Code of Laws, the parties consented to remove the action from probate court to circuit court. S.C.Code Ann. § 62–1–302(c) (Supp.2004) ("Notwithstanding the exclusive jurisdiction of the probate court ... any action or proceeding filed in the probate court and relating to the following subject matters, on motion of a party ... must be removed to the circuit court and in these cases the circuit court shall proceed upon the matter de novo....").

phone, and that Mr. Nasser abruptly cut short the conversation and hung up.

(5) A local attorney who had prepared Nasser's two previous wills felt that Nasser was upset about the April 2000 will, and since the disposition was dramatically different from that of the previous wills, he felt uncomfortable and encouraged the Nassers to seek other counsel.

(6) The durable power of attorney Nasser executed in October of 1999 specifically revoked the previous power of attorney in favor of Leroy Howard. However, the paragraph containing the revocation was in a different font from the rest of the document.

In contrast, the attorney who drafted the April 2000 will testified that Nasser appeared to be of sound mind, and that he freely and voluntarily indicated that he wanted the majority of his estate to go to his wife. Additionally, there was testimony that Leroy Howard's relationship with Nasser had become strained. Nasser allegedly told the witness that he "would rather throw that money in the garbage can or throw it away than for him to have one cent of my money." Moreover, the same witness testified that Leroy Howard called immediately after learning of Nasser's death to inquire about Nasser's estate, whereas Respondent seemed much more concerned about Nasser's death.

After hearing arguments, the circuit court granted Respondent's motion for summary judgment.[2] Specifically, the court ruled that Appellants' burden of proving undue influence could not be shifted to Respondent. The court reasoned that Appellants continued to bear the burden of proof even if a confidential/fiduciary relationship existed between Respondent and Nasser. As to the merits of the cause of action for undue influence, the court found there was no evidence to support Appellants' claim. This appeal followed.

---

2. Although the circuit court judge granted Respondent's motion for summary judgment on all causes of actions, Appellants only appeal the grant of summary judgment as to undue influence. Accordingly, we have limited our analysis solely to the cause of action involving undue influence.

## STANDARD OF REVIEW

■■■ "Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the conclusions and inferences to be drawn from the facts are undisputed." *McClanahan v. Richland County Council,* 350 S.C. 433, 437, 567 S.E.2d 240, 242 (2002). In ruling on a motion for summary judgment, a reviewing court must view the evidence in the light most favorable to the non-moving party. *Id.* at 438, 567 S.E.2d at 242. Summary judgment is a drastic remedy. Thus, it "should be cautiously invoked so that a litigant will not be improperly deprived of trial on disputed factual issues." *Cunningham ex rel. Grice v. Helping Hands, Inc.,* 352 S.C. 485, 491, 575 S.E.2d 549, 552 (2003).

## DISCUSSION

### I.

■■■ Appellants argue the circuit court erred in finding the existence of a confidential/fiduciary relationship between Nasser and Respondent did not shift the burden to Respondent to show the absence of undue influence. Appellants claim Respondent's status as spouse of the decedent and holder of a power of attorney created a fiduciary relationship that gave rise to the presumption of undue influence.

The procedure outlining the burden of proof in contested will cases is governed by section 62–3–407 of the South Carolina Code of Laws. S.C.Code Ann. § 62–3–407 (Supp. 2004). This section provides in pertinent part:

> In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue, and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake, revocation, or lack of testamentary intent or capacity. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

S.C.Code Ann. 62–3–407 (Supp.2004); *see In re Estate of Cumbee,* 333 S.C. 664, 671, 511 S.E.2d 390, 393 (Ct.App.1999)

("Proponents of a will have the burden of establishing prima facie proof of due execution in all cases ... Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake, revocation, or lack of testamentary intent or capacity."). In analyzing this code section, our supreme court has explained:

> When the formal execution of a will is admitted or proved, a prima facie case in favor of the will is made out, and the burden is then on the contestants to prove undue influence, incapacity or other basis of invalidation. The contestants continue to bear the burden of proof throughout the will contest. In determining whether the contestants sustained such burden, the evidence has to be viewed in the light most favorable to the contestants.

*Calhoun v. Calhoun,* 277 S.C. 527, 530, 290 S.E.2d 415, 417 (1982).

■ "Undue influence may be proved by circumstantial evidence, but the circumstances relied on to show it must be such as taken together point unmistakenly and convincingly to the fact that the mind of the testator was subjected to that of some other person, so that the will is that of the latter and not of the former." *Havird v. Schissell,* 252 S.C. 404, 410–11, 166 S.E.2d 801, 804 (1969) (citations omitted); *In re Last Will and Testament of Smoak,* 286 S.C. 419, 424, 334 S.E.2d 806, 809 (1985) ("A will contest based on alleged undue influence is most often adjudicated on the basis of circumstantial evidence.").

■■ "Generally, in cases where a will has been set aside for undue influence, there has been evidence either of threats, force, and/or restricted visitation, or of an existing fiduciary relationship." *Russell v. Wachovia Bank, N.A.,* 353 S.C. 208, 217, 578 S.E.2d 329, 333 (2003). "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *In re Estate of Cumbee,* 333 S.C. at 672, 511 S.E.2d at 394 (quoting *Brown v. Pearson,* 326 S.C. 409, 422, 483 S.E.2d 477, 484 (Ct.App.1997)).

Both parties acknowledge that in contested deed cases a presumption of invalidity arises if the contestants of the deed

present evidence that a confidential or fiduciary relationship existed between the grantor and the grantee. *See Middleton v. Suber,* 300 S.C. 402, 405, 388 S.E.2d 639, 641 (1990) (recognizing that where a "confidential relationship" exists between a grantor and a grantee, the deed is presumed invalid and the burden is upon the grantee to establish the absence of undue influence); *Bullard v. Crawley,* 294 S.C. 276, 280–81, 363 S.E.2d 897, 900 (1987) ("Undue influence in the procurement of a deed may be shown in two ways. The party challenging the deed may show the existence of a confidential relationship between the grantor and the grantee. Once a confidential relationship is shown, the deed is presumed invalid. The burden then shifts to the grantee to affirmatively show the absence of undue influence."); *Hudson v. Leopold,* 288 S.C. 194, 196, 341 S.E.2d 137, 138 (1986)("A fiduciary relationship between the grantor and grantee may give rise to a presumption of undue influence, thus shifting the burden of proof to the grantee to rebut the presumption.").

However, because the instant case involves a will, the central question in this appeal is whether this presumption, which affects the burden of proof, is applicable in the context of a contested will. The parties have not presented nor has our research revealed any case law providing definitive guidance on this issue. However, a recent case of our supreme court appears to implicitly recognize that the presumption of invalidity in deed cases applies to will cases. *Dixon v. Dixon,* 362 S.C. 388, 608 S.E.2d 849 (2005).

In *Dixon,* Mother, who was elderly, conveyed her property to Son. At the same time the deed was executed, Mother signed an agreement prepared by Son whereby he agreed to care for Mother and maintain her residence. Following a confrontation approximately three years later, Mother asked Son to leave her home, changed the locks on the home, and requested that Son re-convey the title to the property to her. When Son refused, Mother filed an action to set aside the deed. Mother claimed undue influence as one of her grounds challenging the deed. Specifically, she asserted that because she and Son were in a confidential relationship, Son had the burden of proving that he did not unduly influence her and he failed to meet that burden. As a threshold matter, our supreme court found a confidential relationship existed be-

tween the parties. The court ultimately concluded that Son proved that he did not unduly influence Mother. In reaching this decision, the court utilized the principles of undue influence applicable in contested will cases. The court relied on precedent from other jurisdictions which has found that "the analysis is the same regardless of whether the underlying document sought to be set aside on the grounds that the plaintiff was unduly influenced is a will or a deed." *Dixon,* 362 S.C. at 398 n. 7, 608 S.E.2d at 854 n. 7. Based on these cases, the court recognized "[m]ost of our jurisprudence on the issue of undue influence involves a contestant seeking to set aside a will, rather than a deed ..., nonetheless, we find no reason why this discrepancy should change our analysis." *Id.*

In addition to *Dixon,* we find secondary authority supports the application of the presumption to contested will cases. Concerning this issue, the Restatement of Property provides in relevant part:

A presumption of undue influence arises if the alleged wrongdoer was in a confidential relationship with the donor and there were suspicious circumstances surrounding the preparation, formulation, or execution of the donative transfer, whether the transfer was by gift, trust, *will,* will substitute, or a donative transfer of any other type. *The effect of the presumption is to shift to the proponent the burden of going forward with the evidence, not the burden of persuasion. The presumption justifies a judgment for the contestant as a matter of law only if the proponent does not come forward with evidence to rebut the presumption.*

Restatement (Third) of Property: Wills and Other Donative Transfers § 8.3 cmt. f (2003) (emphasis added).

■ We interpret the foregoing to mean that if the contestants of a duly executed will provide evidence that a confidential/fiduciary relationship existed sufficient to raise the presumption, the proponents of the will must offer evidence in rebuttal. We emphasize that although the proponents of the will must present evidence in rebuttal, they do not have to affirmatively disprove the existence of undue influence. Instead, the contestants of the will still retain the ultimate burden of proof to invalidate the will. *See* S.C.Code Ann. § 62–3–407 (Supp.2004) ("Parties have the ultimate burden of

persuasion as to matters with respect to which they have the initial burden of proof."); *Calhoun*, 277 S.C. at 530, 290 S.E.2d at 417 ("The contestants continue to bear the burden of proof throughout the will contest."); *Smith v. Whetstone*, 209 S.C. 78, 84, 39 S.E.2d 127, 129 (1946) (stating in case where will is formally executed the burden of proof is on the contestant to prove undue influence "and this burden remains on him to the end").

To summarize, "[w]here the contestants introduce testimony raising a presumption of undue influence by a beneficiary sustaining a confidential or fiduciary relation toward the testator, the issue should be submitted to the jury, as where, in addition to the factor of confidential relations, there also appear the further facts of an unnatural disposition making the person charged with the undue influence chief beneficiary, and that such person generally dominated the testatrix." *Moorer v. Bull*, 212 S.C. 146, 149, 46 S.E.2d 681, 682 (1948) (citations omitted). However, "[a] mere showing of opportunity and even of a motive to exercise undue influence does not justify a submission of that issue to a jury, unless there is additional evidence that such influence was actually utilized. General influence is not enough. A contestant must show that the influence was brought directly to bear upon the testamentary act." *Mock v. Dowling*, 266 S.C. 274, 277, 222 S.E.2d 773, 774 (1976). "The influence must be of such a degree that it dominated the testators will, took away his free agency, and prevented the exercise of judgment and choice by him. If the testator had the testamentary capacity to dispose of his property and was free and unrestrained in his volition at the time of making the will, the influence that may have inspired it or some provision of it will not be undue influence." *In re Last Will and Testament of Smoak*, 286 S.C. at 424, 334 S.E.2d at 809.

## II.

Appellants contend the circuit court erred in finding that they had not proved that undue influence was exerted upon Nasser.

Viewing the facts in the light most favorable to Appellants and in the context of the above-outlined principles, we hold a

genuine issue of material fact was created regarding Appellants' claim of undue influence. Initially, we note the formal execution of the will is undisputed, and thus, is presumed valid. Furthermore, we find, and the parties appear to agree, that a confidential/fiduciary relationship existed between Nasser and Respondent. In addition to the confidential relationship by way of marriage, Respondent admitted at oral argument that the power of attorney that Nasser gave to Respondent created a fiduciary relationship. *See In re Estate of Cumbee*, 333 S.C. at 672–73, 511 S.E.2d at 394 (finding in will contest that fiduciary relationship, which created the presumption of undue influence, existed between son and mother where son had mother's power of attorney and managed her finances); *see also Chapman v. Citizens & S. Nat'l Bank of South Carolina*, 302 S.C. 469, 477, 395 S.E.2d 446, 451 (Ct.App.1990) ("[W]e hold that when a husband or wife reposes in the other a trust to do or not do an act relating to the corpus of his estate after his or her death a confidential relationship shall be deemed to have existed if the one in whom the confidence is reposed has the power to abuse the confidence to his or her advantage.").

Appellants did not rely solely on the existence of a confidential/fiduciary relationship, but additionally offered the following evidence in support of their claim of undue influence: (1) Nasser was physically infirm as a result of a terminal illness prior to the execution of the will; (2) the disposition of Nasser's estate was significantly different from his two prior wills; (3) Respondent was present at the meetings with the attorneys to discuss the contents of the new will; (4) Nasser's relationship with his nephews became strained and the frequency of family visits was limited after Nasser's remarriage; (5) Nicholas Franchina, a member of the extended family, noticed a change in Nasser's disposition and believed someone was monitoring Nasser's telephone conversations; and (6) Joseph Francis, Jr., an attorney who discussed estate planning with Nasser and Respondent, refused to draft Nasser's will because he believed Nasser was troubled by the changes. We believe this evidence was sufficient to require Respondent to present evidence rebutting the presumption of invalidity.

In contrast to Appellants' evidence, Respondent offered the following evidence: (1) Nasser traveled to Pennsylvania short-

ly before his death to attend a family event; (2) treating physicians did not discern any mental infirmity; (3) the attorney who prepared the final will believed Nasser had the requisite mental and physical capacity to dispose of his estate and that Nasser and his nephew had a "falling out"; (4) a stockbroker, who handled Nasser's investments in April 2000, testified that Nasser did not want his nephew to have any of his money; and (5) Respondent denied she used Nasser's power of attorney, restricted his family visits, or monitored his telephone conversations.

Because there exists a conflict in the evidence, thus creating a genuine issue of material fact, we find the circuit court improperly granted summary judgment in favor of Respondent. *See Byrd v. Byrd,* 279 S.C. 425, 431, 308 S.E.2d 788, 791–92 (1983) (finding in will contest case that issue of undue influence was properly submitted to the jury where: testator was physically and mentally infirm prior to and contemporaneous with the execution of the will; son, who was the principal beneficiary of the will and in a confidential/fiduciary relationship with testator, threatened to place testator in a nursing home and attempted to restrict visits between testator and his other children; and the will was executed less than six months prior to testator's death); *Moorer,* 212 S.C. at 149, 46 S.E.2d at 681–82 (holding issue of undue influence in contested will case was properly submitted to the jury where there was evidence that testator's son was in a confidential/fiduciary relationship with his mother, mother was in fear of him, and he indicated an intention to procure for himself her estate).

Again, we emphasize that the burden of proof as to undue influence remains on Appellants throughout the will contest. In reversing the circuit court, we offer no opinion regarding Appellants' success on the merits. We merely find that Appellants offered sufficient evidence to survive summary judgment.

Accordingly, the decision of the circuit court is

**REVERSED AND REMANDED.**

HUFF, J. and CURETON, A.J.