On May 4, 2016, Respondents again moved to dismiss the appeal, arguing DeHaven lacked standing to prosecute the appeal because DeHaven's status as Swiger's "attorney-in-fact" terminated upon Swiger's death, and DeHaven had not provided any information indicating a personal representative had been appointed, an executor had been appointed, or a probate estate had been opened. This court denied the motion **415 to dismiss but ruled Respondents could raise the standing issue during briefing.
Standard of Review
"An action to contest a will is an action at law, and in such cases reviewing courts will not disturb the probate court's findings of fact unless a review of the record discloses no evidence to support them." Hairston v. McMillan , 387 S.C. 439, 445, 692 S.E.2d 549, 552 (Ct. App. 2010).
"In reviewing the grant of [a] summary judgment motion, the [appellate court] applies the same standard as the trial court under Rule 56(c), SCRCP." In re Estate of Smith , 419 S.C. 111, 116, 796 S.E.2d 158, 160 (Ct. App. 2016) (second alteration by court) (quoting Dawkins v. Fields , 354 S.C. 58, 69, 580 S.E.2d 433, 438-39 (2003) ).
Rule 56(c) states summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
Id. (citation omitted). "[I]n cases requiring a heightened burden of proof ... the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment." Hancock v. Mid-South Mgmt. Co., Inc. , 381 S.C. 326, 330-31, 673 S.E.2d 801, 803 (2009). "Since the standard of proof in an undue influence case is unmistakable and convincing evidence, there must be more than a scintilla of evidence in order to defeat a motion for summary judgment." Russell v. Wachovia Bank, N.A. , 353 S.C. 208, 218, 578 S.E.2d 329, 334 (2003).
I. Standing
Respondents argue this court lacks jurisdiction because DeHaven, who filed the notice of appeal, lacked authority or standing to prosecute the matter. We disagree.
*204 Appeals from the probate court are governed by the South Carolina Probate Code. See Dorn v. Cohen , 421 S.C. 517, 520, 809 S.E.2d 53, 54 (2017) (per curiam) (holding the court of appeals erred in applying the general appellate jurisdiction **416 statute to determine the immediate appealability of an interlocutory or intermediate order because the probate code governs appeals from the probate court). The South Carolina Probate Code allows a person "interested" in a final order of a probate court, including intestate heirs, to appeal to the circuit court. See S.C. Code Ann. § 62-1-308(a) (Supp. 2018) ("A person interested in a final order, sentence, or decree of a probate court may appeal to the circuit court in the same county, subject to the provisions of Section 62-1-303."); S.C. Code Ann. § 62-1-201(23) (Supp. 2018) (defining "interested person" to include heirs and "persons having priority for appointment as personal representative and other fiduciaries representing interested persons"); S.C. Code Ann. § 62-1-201(20) (Supp. 2018) (" 'Heirs' means those persons ... who are entitled under the statute of intestate succession to the property of a decedent.").
DeHaven is Decedent's niece through Swiger, his sister. Therefore, the Probate Code affords DeHaven standing in her own right to pursue this appeal because she is an intestate heir of Decedent and, therefore, an "interested person." See S.C. Code Ann. § 62-2-103(3) (Supp. 2018) (providing for intestate succession where there is no surviving spouse, issue, or parent "to the issue of the parents or either of them by representation"); S.C. Code Ann. § 62-2-103(4) (Supp. 2018) ("[I]f there is no surviving issue, parent or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, half of the estate passes to the paternal grandparents if both survive, or to the surviving paternal grandparent, or to the issue of the paternal grandparents if both are deceased, the issue taking equally if they are all of the same degree of kinship to the decedent. ..."). Swiger died on October 6, 2015, after the probate court granted summary judgment. However, DeHaven was listed as a successor-in-interest in Swiger's petition to the probate court, and upon the consent motion of the parties at the summary judgment hearing, the probate court amended the case caption to list DeHaven as a party through Swiger due to Swiger's mental incapacitation. Thus, we find DeHaven has standing to pursue this appeal.
**417 II. Undue Influence
"Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake, revocation, or lack of testamentary intent or capacity." S.C. Code Ann. § 62-3-407 (Supp. 2018). "Undue influence must be shown by unmistakable and convincing evidence, which is usually circumstantial." Russell , 353 S.C. at 217, 578 S.E.2d at 333. "In order for the will to be void due to undue influence, '[a] contestant must show that the influence was brought directly to bear upon the testamentary act.' " Id. at 219, 578 S.E.2d at 335 (quoting Mock v. Dowling , 266 S.C. 274, 277, 222 S.E.2d 773, 774 (1976) ).
"A mere showing of opportunity or motive does not create an issue of fact regarding undue influence." In re Estate of Cumbee , 333 S.C. 664, 671, 511 S.E.2d 390, 394 (Ct. App. 1999). To send the issue of undue influence to the jury, the contestant must show more than general influence-"there [must be] additional evidence that such influence was actually utilized." Howard v. Nasser , 364 S.C. 279, 289, 613 S.E.2d 64, 69 (Ct. App. 2005) (quoting Mock , 266 S.C. at 277, 222 S.E.2d at 774 ).
"The influence necessary to void a will must amount to force and coercion." Wilson v. Dallas , 403 S.C. 411, 437, 743 S.E.2d 746, 760 (2013). "The evidence must show that the free will of the testator was taken over by someone acting on testator's behalf." Russell , 353 S.C. at 217, 578 S.E.2d at 333. "In order to void a will on the ground of undue influence, the undue influence must destroy free agency and prevent the maker's exercise of judgment and free choice." In re Estate of Cumbee , 333 S.C. at 671, 511 S.E.2d at 394. "If the testator had the testamentary capacity to dispose of his property and was free and unrestrained in his volition at the time of making the will, the influence that may have inspired it or some provision of it will not be undue influence."
*205 Howard , 364 S.C. at 289, 613 S.E.2d at 69 (quoting In re Last Will & Testament of Smoak , 286 S.C. 419, 424, 334 S.E.2d 806, 809 (1985) ).
"Generally, in cases where a will has been set aside for undue influence, there has been evidence either of threats, force, and/or restricted visitation, or of an existing **418 fiduciary relationship." Russell , 353 S.C. at 217, 578 S.E.2d at 333. "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." In re Estate of Cumbee , 333 S.C. at 672, 511 S.E.2d at 394 (quoting Brown v. Pearson , 326 S.C. 409, 422, 483 S.E.2d 477, 484 (Ct. App. 1997) ). "The existence of a fiduciary relationship between a testator and beneficiary raises a presumption of undue influence. If evidence of such a relationship is presented, the proponents of the will must offer rebuttal evidence." Hairston , 387 S.C. at 447, 692 S.E.2d at 553 (citation omitted). However, "although the proponents of the will must present evidence in rebuttal, they do not have to affirmatively disprove the existence of undue influence. Instead, the contestants of the will still retain the ultimate burden of proof to invalidate the will." Howard , 364 S.C. at 288, 613 S.E.2d at 68-69.
To summarize, "[w]here the contestants introduce testimony raising a presumption of undue influence by a beneficiary sustaining a confidential or fiduciary relation toward the testator, the issue should be submitted to the jury, as where, in addition to the factor of confidential relations, there also appear the further facts of an unnatural disposition making the person charged with the undue influence chief beneficiary, and that such person generally dominated the testatrix."
Id. at 289, 613 S.E.2d at 69 (alteration by court) (quoting Moorer v. Bull , 212 S.C. 146, 149, 46 S.E.2d 681, 682 (1948) (emphasis added)).
Initially, we note the probate court's finding of testamentary capacity was not challenged; therefore, it is the law of the case. See Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund , 389 S.C. 422, 431, 699 S.E.2d 687, 691 (2010) ("An unappealed ruling is the law of the case and requires affirmance.").
We acknowledge DeHaven's argument that the record contains conflicting inferences regarding Decedent's wishes, but we find such conflicting wishes related to the former caregiver, Snow-not DeHaven or Decedent's blood relatives. Decedent executed the Will on January 14, 2012. Thereafter, **419 on February 5, 2012, Marcy Thomas, Decedent's social worker, reported:
[Decedent] spoke at length about nieces and nephews and his will. He understands that they want to be included in his will. He said "this is why they are not in my will." He clearly stated that he "loved his 'little girl' very much and she took good care of him" and he "wanted her to have the money he designated her to have in his will." [Decedent] stated how upset he was when one nephew came and asked for his money to be divided evenly.
Thomas opined Decedent was "having a very cognitively clear afternoon" the day they had this discussion, which occurred almost three weeks after the execution of the Will. But, there is no evidence that Decedent attempted to change his will at any point after its January 14th execution, despite this cognitive clarity. Therefore, we find the circuit court correctly affirmed the probate court's grant of summary judgment because DeHaven failed to provide more than a scintilla of evidence to establish undue influence was exerted upon Decedent when he executed the Will . See Russell , 353 S.C. at 219, 578 S.E.2d at 335 ("In order for the will to be void due to undue influence, '[a] contestant must show that the influence was brought directly to bear upon the testamentary act.' " (alteration by court) (quoting Mock , 266 S.C. at 277, 222 S.E.2d at 774 )).
Decedent had numerous nieces and nephews-those on his wife's side of the family, who are devisees under the Will, and those on his side, whom he chose not to include. In their interrogatory responses, Respondents claimed Decedent did not even want his side of the family to be notified of his death.
*206 Although this conversation did not identify which specific nieces and nephews Decedent sought to exclude, other evidence in the record established Respondents were not among the disinherited group of relatives from Decedent's own side of the family.
Nephew believed any statement by Decedent that he wanted to give his money to "his little girl," likely referred to Snow, the former caregiver. Niece knew Snow was included in Decedent's prior will and stated Decedent told her he wanted to "look after" Snow. However, Nephew testified Decedent's attorney told Nephew to destroy the prior will due to the conflict of interest presented by Snow's involvement and her **420 influence over Decedent, along with the abuse concerns raised upon Decedent's admission to Carolinas Medical Center.
The only evidence DeHaven provided to suggest the words in the Will were not Decedent's own was the testimony of Dr. James Jewell, a physician at Decedent's nursing home who indicated he would "be surprised that given the situation ... that these words would be [Decedent's]." He clarified, "It would depend on the person themselves, whether they were legalese oriented in that way. I'm not saying that they wouldn't necessarily understand what was here." Dr. Jewell admitted he did not remember Decedent well and had visited Decedent only two or three times. Dr. Jewell further testified it was unlikely he had formally assessed Decedent's mental status.
Significantly, DeHaven did not set forth any evidence that Respondents restricted visitation with respect to her side of the family. The evidence in the record reflects Respondents sought only to prohibit Snow from visiting Decedent, and there is no evidence that Snow ever attempted to visit or contact Decedent while he lived at Westminster Towers. Contra In re Estate of Cumbee , 333 S.C. at 672, 511 S.E.2d at 394 (noting the record contained evidence of undue influence where although testator had access to visitors, her son admitted he monitored her conversations with her other son via a baby monitor and testator created hand signals to communicate with her visitors); Byrd v. Byrd , 279 S.C. 425, 429, 308 S.E.2d 788, 790 (1983) (finding evidence of undue influence where "[t]here was also evidence of a purpose and design ... to restrict the visits and to prevent communications between the testator and his children prior to and following the date of the execution of the will"). DeHaven provided no proof of actual restricted visitation nor evidence to establish how any alleged restricted visitation could have influenced Decedent's execution of the Will.
Similarly, there is scant evidence in the record suggesting family members from DeHaven's side of the family ever attempted to visit Decedent during any alleged restrictive period. For example, in their interrogatory responses, Respondents explained:
When [Decedent] received notice from Margaret Dudley [, Decedent's niece on his side of the family,] that she and **421 others were planning to visit during their travel to Florida, [Decedent] requested that he not be left alone with them because they were only interested in his money. He stated that these relatives only visited with him in years past so that they would have a free place to stay when they went to Florida.
The record contains no indication as to when (if ever) any unsuccessful attempted visit took place. Even when viewed in the light most favorable to DeHaven, this interrogatory response constitutes, at most, a mere scintilla of evidence of restricted visitation-and suggests Decedent himself sought the restriction. This is insufficient for a claim of undue influence to survive a properly supported summary judgment motion. See Russell , 353 S.C. at 218, 578 S.E.2d at 334 (recognizing a party arguing undue influence must provide more than a scintilla of evidence to survive a summary judgment motion).
Viewing the evidence in the light most favorable to DeHaven, a confidential or fiduciary relationship did exist between Decedent and Respondents because Niece held Decedent's healthcare power of attorney and Nephew held Decedent's power of attorney. See M & M Grp., Inc. v. Holmes , 379 S.C. 468, 473, 666 S.E.2d 262, 264 (Ct. App. 2008) ("On appeal from an order granting summary judgment, the appellate court will review *207 all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below." (quoting Willis v. Wu , 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004) )); In re Estate of Cumbee , 333 S.C. at 672, 511 S.E.2d at 394 (finding son had a fiduciary relationship with his mother, the testator, because he had her power of attorney and managed all of her finances, including keeping her checkbook).[3]
However, sufficient evidence exists to rebut any presumption of undue influence created by the existence of these fiduciary relationships. Nephew was not present when the Will **422 was dictated and drafted, and the healthcare power of attorney naming Niece is dated February 8, 2012-three weeks after the execution of the Will. A social worker from Westminster Towers met with Decedent frequently, without family members present, and Decedent could have shared any concerns with her during their discussions. In fact, Decedent told the social worker on January 3, 2012, less than two weeks before the execution of the Will, that although he and his family disagreed about whether he should return home, he knew his family wanted to help him. Finally, while it appears Respondents were involved in determining Decedent's living arrangements, there is no evidence in the record that the powers of attorney were ever otherwise utilized. See In re Estate of Anderson , 381 S.C. 568, 575, 674 S.E.2d 176, 180 (Ct. App. 2009) (finding no undue influence existed when grandsons had a fiduciary relationship with testator by way of power of attorney but there was no evidence the powers of attorney were utilized). Even if Respondents had some influence over Decedent's disposition of his estate, such influence did not amount to undue influence because Decedent had the testamentary capacity to dispose of his estate, and DeHaven failed to provide sufficient evidence that Decedent's will was in any way restrained or overcome. See Howard , 364 S.C. at 289, 613 S.E.2d at 69 ("If the testator had the testamentary capacity to dispose of his property and was free and unrestrained in his volition at the time of making the will, the influence that may have inspired it or some provision of it will not be undue influence." (quoting In re Last Will & Testament of Smoak , 286 S.C. at 424, 334 S.E.2d at 809 )).
Conclusion
Based on the foregoing, the summary judgment orders of the probate court and circuit court are
AFFIRMED.
HUFF and GEATHERS, JJ., concur.

Respondents assert DeHaven's argument as to the rebuttable presumption presented by a "confidential or fiduciary relationship" is unpreserved. We find the question is preserved because the probate court's order addressed the undue influence argument at length, noting Decedent never expressed concerns to the disinterested third parties to whom he had unfettered access "about Respondents' treatment of him or about the powers of attorney he executed naming Respondents as his agents." Further, the probate court addressed the question of rebuttable presumptions in the context of undue influence as well as the unwillingness of courts to "impose upon beneficiaries who occupy such a position of trust the burden of proving an absence of improper influence ...."