**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Karen Petit, Appellant,

v.

Phyllis Jean Krohn, USAA Federal Savings Bank, and USAA Investment Management Co., Respondents.

Appellate Case No. 2020-000917

———

Appeal From Greenwood County
Donald B. Hocker, Circuit Court Judge

———

Opinion No. 2024-UP-293
Heard April 12, 2023 – Filed August 14, 2024

———

**AFFIRMED**

———

Jane Hawthorne Merrill, of Hawthorne Merrill Law, LLC, of Greenwood, and Scarlet Bell Moore, of Greenville, both for Appellant.

William Stevens Brown, V, of Nelson Mullins Riley & Scarborough, LLP, of Greenville, for Respondents USAA Federal Savings Bank and USAA Investment Management Co.; and Joshua Shaheen Nasrollahi, of Greenwood, for Respondent Phyllis Jean Krohn.

———

**PER CURIAM:** Karen Petit (Karen) appeals the circuit court's orders granting Phyllis Krohn (Phyllis), USAA Federal Savings Bank, and USAA Investment Management Co.'s motions for summary judgment, arguing the circuit court failed to view the evidence in the light most favorable to her when considering her claims. The crux of Karen's argument is that USAA Federal Savings Bank and USAA Investment Management Co. (collectively, USAA) improperly accepted a designation of beneficiary form for her father's individual retirement account (IRA) after Phyllis "unilaterally decided to change the beneficiaries." We affirm both orders granting summary judgment.

**Facts and Procedural History**

Dr. Edward LeRoy Petit (Decedent) died in March 2015. He was survived by his daughter, Karen, and two granddaughters, who are Karen's nieces. Decedent was predeceased by his wife, Helen, and his daughter, Kathy, who was Karen's sister. Decedent and Phyllis became companions after Helen died.

On May 2, 2002, Decedent transferred his IRA funds from Raymond James to USAA Federal Savings Bank (USAA IRA); in 2007, these IRA funds were transferred to USAA Investment Management Co. On January 15, 2007, Decedent completed a designation of beneficiary form, changing his beneficiary from Helen to his two daughters (Karen and Kathy), with Kathy's portion to be held in trust. That designation of beneficiary form stated:

> I understand this Change of Designation of Beneficiary
> will be effective on the date of receipt by the Custodian
> and that upon any change of beneficiary, the right of all
> previously designated beneficiaries to receive benefits
> under this Plan shall cease.
>
> I retain the right to revoke this designation of beneficiary
> and to designate a new beneficiary at any time by
> communicating to the Custodian in writing.

On January 26, 2009, Decedent completed a USAA power of attorney form, naming Phyllis as his attorney-in-fact. That form contained the following limitation in section 1(d), addressing investment transactions:

> Limitations: My attorney does not have the authority to
> make himself or herself or others the co-owner or

beneficiary of such investment accounts; does not have
the authority to change ownership of such investment
accounts; does not have a power of appointment over
such investment accounts; and does not have the
authority to make a gift of the securities held in such
investment accounts to himself or herself or to others.

On November 9, 2010, Decedent completed another USAA power of attorney
form, again naming Phyllis as his attorney-in-fact. On the 2010 form, Decedent
checked a box indicating Phyllis has "all the powers listed below" and did not
preclude her from changing the account beneficiaries. In November 2011,
Decedent asked USAA to send him the form required to change his IRA
beneficiaries. Shortly after Decedent made this request, Eddie Kramer, a USAA
financial adviser, visited Decedent's home in Greenwood to discuss Decedent's
investments.

While on a cruise with Phyllis in January 2012, Decedent lost consciousness and
was taken from the ship to a hospital in Key West. He was then transferred to a
Miami facility, where he underwent a heart catherization, ablation, and defibrillator
and pacemaker implantation. Decedent was eighty-seven years old at this time.

Decedent was discharged on January 22, 2012, and he and Phyllis returned home
to Greenwood. The following day, Decedent executed the USAA designation of
beneficiary form naming his two granddaughters (Granddaughters) as the primary
beneficiaries of the IRA; Karen and Kathy were named secondary beneficiaries.[1]

On February 27, 2012, Decedent executed two new powers of attorney: a
healthcare power of attorney appointing Kathy as his agent for healthcare decisions
and a general durable power of attorney appointing his longtime accountant, Henry
A. Dorn, as his attorney-in-fact for financial and healthcare purposes.

On May 15, 2013, the probate court found Decedent met the definitions of an
"incapacitated person" and a "legally incompetent adult." In this 2013 order, the
probate court further declared the two February 2012 powers of attorney would

---

[1] Phyllis admitted in her deposition that she filled out the printed portion of the
form for Decedent, but it is undisputed that Decedent signed the form and that he
asked USAA to send him the form in November 2011. It is further undisputed that
Phyllis never executed any documents pursuant to the USAA power of attorney.

remain in effect. The probate court appointed Karen and Kathy as Decedent's co-guardians.

In 2014, Dorn transferred all funds from the USAA IRA to Wells Fargo (Wells Fargo IRA), and closed the USAA IRA. Granddaughters were again designated as primary beneficiaries. Following Decedent's March 2015 death, Wells Fargo released the IRA funds to Granddaughters.

In early 2017, Karen learned of the 2012 USAA designation of beneficiary form naming Granddaughters the primary beneficiaries of the IRA funds. As the new beneficiaries were designated without her knowledge, Karen asked Phyllis about the revision during a June 2017 conversation at the South Carolina Festival of Flowers. According to Karen, Phyllis admitted she changed the beneficiaries after suggesting to Karen's father that he do something nice for Granddaughters. Karen claims Phyllis apologized and stated she thought Karen would receive other funds from Decedent.

In addition to her own recollection of this conversation, Karen provided an affidavit from a third-party witness, Wally Dorn, who averred he saw Karen speaking with an older woman at the festival. He noted, "Karen was gesturing with her hands, and Karen's facial expressions showed that she was upset." According to Wally, Karen told him:

> [Phyllis] decided that her father's IRA should go to his granddaughters, and she changed the beneficiary form to exclude Karen and her sister Kathy Petit from inheriting their father's IRA. [Phyllis] told her that she was sorry for the damage that she had caused her, and also for all of the other things that she had done while being his companion.

Karen later brought suit against USAA for breach of fiduciary duty, negligence, and breach of contract. She also sued Phyllis for interference with a contractual relationship, breach of fiduciary duty, negligence, and undue influence. USAA moved for summary judgment, as did Phyllis. Following a hearing, the circuit court issued separate orders granting Respondents' motions for summary judgment. The circuit court denied Karen's motion to reconsider, and she timely appealed.

**Standard of Review**

"In reviewing a grant of summary judgment, our appellate court applies the same standard as the trial court under Rule 56(c), SCRCP." *Woodson v. DLI Props., LLC*, 406 S.C. 517, 528, 753 S.E.2d 428, 434 (2014). Rule 56(c) "provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) (alterations in original) (quoting Rule 56(c), SCRCP)).

**I. Phyllis**

   **A. Tortious Interference with Contract**

Karen argues Phyllis interfered with a contractual relationship "formed pursuant to the facts of this case," causing Karen damages. We disagree.

"The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012) (quoting *Camp v. Springs Mort. Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993)). "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties." *Id.* (alteration in original) (quoting *Threlkeld v. Christoph*, 280 S.C. 225, 227, 312 S.E.2d 14, 15 (Ct. App. 1984)).

Although Decedent had a contract with USAA and later with Wells Fargo, Karen was not a party to either contract. Karen asserts she was a third-party beneficiary with vested rights under the USAA IRA; however, South Carolina law does not support her position. *See, e.g.*, *Horne v. Gulf Life Ins. Co.*, 277 S.C. 336, 338, 287 S.E.2d 144, 146 (1982) ("Where the insured has reserved the right in his policy to change the beneficiary, the named beneficiary does not have a vested right during the insured's lifetime."); *Shuler v. Equitable Life Assur. Soc. of U.S.*, 184 S.C. 485, 193 S.E. 46, 48 (1937) (holding a beneficiary of a life insurance policy had a "mere expectancy" while the policy holder was still alive, and thus, could not bring a claim for damages); *Stribling v. Stribling*, 369 S.C. 400, 406, 632 S.E.2d 291, 294 (Ct. App. 2006) ("Like the beneficiary in a life insurance policy, the IRA beneficiary merely has an expectancy interest in the IRA until the owner's death."),

*superseded by statute on other grounds*, S.C. Code Ann. § 62-2-507 (2022), *as recognized in Meier v. Burnsed*, 438 S.C. 362, 371, 882 S.E.2d 863, 868 (Ct. App. 2022), *cert. granted* (Jan. 9, 2024); *see also Prince v. Liberty Life Ins. Co.*, 390 S.C. 166, 171, 700 S.E.2d 280, 283 (Ct. App. 2010) (stating, when a right to change beneficiaries is reserved, "[t]he rights of the existing beneficiary are inchoate and may be nullified by action on the part of the insured . . ." (quoting *Rice v. Palmetto State Life Ins. Co.*, 196 S.C. 410, 412, 13 S.E.2d 493, 494, (1941))).

During her deposition, Karen admitted Decedent had the right to change his beneficiaries at any time up until his death (to the extent he was competent to do so). The record reflects that in 2012, with Phyllis's assistance, Decedent executed a designation of beneficiary form naming Granddaughters as primary beneficiaries and his daughters as secondary beneficiaries. Granddaughters remained the beneficiaries at the time of Decedent's death. Karen had no vested rights in either the USAA IRA or the Wells Fargo IRA. Moreover, any expectancy Karen had in the proceeds of the USAA IRA ceased to exist when Dorn closed the USAA account and transferred those funds to Wells Fargo. Because the record does not support Karen's interference claim, we find the circuit court properly granted Phyllis's motion for summary judgment.[2]

### B. Breach of Fiduciary Duty

Karen further alleges a fiduciary relationship existed between Phyllis and Decedent and that Phyllis breached this duty when she exceeded the authority granted through Decedent's USAA power of attorney by changing the IRA beneficiaries. Karen correctly cites *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992), for the proposition that a fiduciary relationship exists by law and fact "when one reposes special confidence in another, so that the latter . . . is bound to

---

[2] Karen's recollection of the conversation with Phyllis at the Festival of Flowers does not create a genuine issue of material fact sufficient to overcome Respondents' motions for summary judgment, specifically the documentation Decedent signed designating Granddaughters as the primary beneficiaries of his USAA IRA. There is no evidence in the record to support the inference that Decedent lacked the mental capacity to execute the form and make this change; it is further uncontested that his signature is on the form changing the beneficiaries. And, although Karen correctly notes Decedent suffered a cardiac incident while on the cruise with Phyllis, the evidence establishes that he requested the form to make this change some two months before the couple left for the cruise.

act in good faith and with due regard" to his interests. *See also RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012) ("To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant."). But Karen presented no evidence that Phyllis owed her a fiduciary duty; the circuit court therefore properly granted summary judgment.

## C. Negligence

Karen next argues Phyllis voluntarily undertook a duty of due care to Karen, a third-party beneficiary of the USAA IRA, when she acted as Decedent's attorney-in-fact. Karen also alleges Phyllis was negligent or reckless in mismanaging Decedent's IRA and in changing the account beneficiaries without Decedent's proper authorization.

Even when we view the evidence in the light most favorable to Karen, as we must, the evidence does not demonstrate Phyllis owed Karen a duty of care. Perhaps equally important is the fact that Phyllis never took any action pursuant to the USAA power of attorney. Thus, the circuit court correctly granted summary judgment on the negligence claim. *See Hinds v. Elms*, 358 S.C. 581, 585, 595 S.E.2d 855, 857 (Ct. App. 2004) ("To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty." (quoting *Vinson v. Hartley*, 324 S.C. 389, 399, 477 S.E.2d 715, 720 (Ct. App. 1996))).

## D. Undue Influence

Karen next asserts that by Phyllis's own admission at the Festival of Flowers, she exerted undue influence over the will and intent of Decedent. Relying on Phyllis's apology, Karen argues a valid form should have been executed pursuant to Decedent's specific will and intent. She further contends there would be no reason for Phyllis to apologize unless she knowingly participated in an improper process and imposed her will upon Decedent. We disagree.

In *Swiger by & through DeHaven v. Smith*, this court stated:

> A mere showing of opportunity or motive does not
> create an issue of fact regarding undue influence.

> To send the issue of undue influence to the jury, the contestant must show more than general influence—there [must be] additional evidence that such influence was actually utilized.
>
> The influence necessary to void a will [or other instrument] must amount to force and coercion. The evidence must show that the free will of the testator was taken over by someone acting on testator's behalf. In order to void a will on the ground of undue influence, the undue influence must destroy free agency and prevent the maker's exercise of judgment and free choice. If the testator had the testamentary capacity to dispose of his property and was free and unrestrained in his volition at the time of making the will, the influence that may have inspired it or some provision of it will not be undue influence.

426 S.C. 408, 417, 827 S.E.2d 200, 204 (Ct. App. 2019) (first alteration in original) (citations omitted).

The February 2012 instruments Decedent executed included a healthcare power of attorney appointing daughter Kathy as Decedent's agent for healthcare decisions and a general durable power of attorney appointing Dorn as attorney-in-fact over Decedent's finances and healthcare. Although the probate court declared Decedent incompetent as of May 15, 2013, the court ordered the 2012 powers of attorney would remain in effect provided Dorn "shall not have the authority to make any healthcare decisions" due to the daughters' appointment as Decedent's co-guardians.

Although Karen and Kathy were once named primary beneficiaries of the USAA IRA, Phyllis testified Decedent wanted to change the beneficiaries to his granddaughters and that she assisted him in doing so. Phyllis is neither related to nor had a significant relationship with either granddaughter.

In its order granting summary judgment in favor of Phyllis, the circuit court found instructive our supreme court's decision in *Calhoun v. Calhoun*, which explained:

The respondents attempted to prove that appellant Virginia Calhoun unduly influenced the testator to leave her the greatest portion of his estate. Their evidence consisted of the following: the testator was physically feeble; he was temporarily confused during a period of hospitalization one year before he executed the will; approximately two months after he executed the will, he was disoriented; appellant Virginia Calhoun visited the testator in the nursing home almost everyday; the testator sometimes would "fuss" at her when he was frustrated; the testator once was overheard to say that appellant Virginia Calhoun wanted it all; she asked Dr. Wilson to examine the testator before he made some changes in his will; and she drove the testator to his attorney's office to prepare the will. However, appellant Virginia Calhoun was not present during any of the testator's conferences with his attorney nor was she physically present when the will was executed. She did not have possession of the will after its execution; instead, testator's accountant, close friend, and a subscribing witness, Mr. Holbert, kept it in his possession. Mr. Holbert testified that on the date of the execution the testator was rational, was not rushed into signing the will, and seemed satisfied with it.

277 S.C. 527, 532-33, 290 S.E.2d 415, 418-19 (1982).

Karen argues the facts of *Calhoun* are distinguishable from the facts here. In *Calhoun*, the decedent was physically feeble, temporarily confused one year prior to executing the challenged will, and disoriented about two months after signing the will. *Id.* at 532-33, 290 S.E.2d at 418. Here, Decedent signed the change of beneficiary designation form the day after his discharge from a two-week hospital stay during which he underwent two surgical procedures and was prescribed pain medication. Although Phyllis may have had more opportunities for persuasion than Karen, this does not constitute undue influence. *See id.* at 533, 290 S.E.2d at 419 ("The record is devoid of any evidence that appellant Virginia Calhoun interfered with the making of the will. She may have been interested in the will and may have had more opportunities for persuasion than the respondents. However, this alone does not constitute undue influence.").

As noted above, there is evidence in the record that Decedent changed his beneficiaries on more than one occasion and that he knew he could change this designation at any time. *See id.* ("The evidence reflects that the testator had made several previous wills; therefore, he knew he could alter or revoke this one."). And, as the circuit court correctly found, "while the record may demonstrate that the decedent was in poor health at the time the beneficiaries were changed, no evidence was presented demonstrating that the decedent was incompetent to execute the change." Because Karen has not presented evidence necessary to satisfy the heightened burden of proof required to support a claim of undue influence, the circuit court did not err in granting Phyllis's motion for summary judgment. *See Swiger*, 426 S.C. at 417, 827 S.E.2d at 204 (reiterating that "[u]ndue influence must be shown by unmistakable and convincing evidence").

## II. USAA

The circuit court found Karen "lacks standing to bring this lawsuit" against USAA. Karen has not challenged this finding as to USAA, and it is now the law of the case. *See Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund*, 389 S.C. 422, 431, 699 S.E.2d 687, 691 (2010) ("An unappealed ruling is the law of the case and requires affirmance."); *see also Stribling*, 369 S.C. at 406, 632 S.E.2d at 294 ("IRA beneficiary merely has an expectancy in the IRA until the owner's death."). However, because the circuit court further found the "individual causes of action fail as a matter of law," we briefly address the merits of these claims below.

### A. Breach of Contract

"The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012). It is uncontested that a contractual relationship existed in the past between Decedent and USAA. However, even when Karen was a primary beneficiary of Decedent's USAA IRA, she was not a party to his USAA contract and she had no vested right in the IRA funds. *See Horne*, 277 S.C. at 338, 287 S.E.2d at 146 ("Where the insured has reserved the right in his policy to change the beneficiary, the named beneficiary does not have a vested right during the insured's lifetime."). Notably, although Phyllis filled out the change of beneficiary form for Decedent, Decedent signed the form himself. Other than noticing Decedent's signature appears "wobbly" and "shaky," Karen provided no evidence challenging Decedent's signature on the USAA form changing the beneficiaries. As Karen cannot demonstrate a genuine issue of

material fact as to the existence of a USAA contract to which she was a party—or any breach of such—summary judgment was proper.

## B. Breach of Fiduciary Duty

In examining the nature of an individual's relationship with his bank, this court has explained:

> South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature. However, a bank may be held to a fiduciary duty if it undertakes to advise a depositor as part of services the bank offers. Such a relationship charges the bank with a duty to disclose material facts that may affect its customer's interests. Yet, no fiduciary relationship between a bank and its depositor exists when the bank is unaware of any special trust reposed in it.

*Regions Bank v. Schmauch*, 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct. App. 2003) (citations omitted).

Although Phyllis testified in her deposition that Kramer, a financial adviser with USAA, visited Decedent's home to discuss his investments and the process for changing beneficiaries after Decedent requested the form, Karen presented no evidence that Decedent reposed a special trust in USAA or that USAA was aware of any special trust reposed in it by Decedent. No evidence exists to suggest USAA owed any such duty to Karen.

## C. Negligence

"To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty." *Hinds*, 358 S.C. at 585, 595 S.E.2d at 857 (quoting *Vinson*, 324 S.C. at 399, 477 S.E.2d at 720). Again, viewing the evidence in the light most favorable to Karen, we find she has not established USAA owed her a duty of care. Moreover, Karen failed to present evidence that USAA breached any duty to anyone by processing the 2012 change of beneficiary form—which was requested by Decedent, filled out by Phyllis, and signed by Decedent—because both Decedent and Phyllis, as his attorney-in-fact, had the power to change his

beneficiaries at any time (at least until Decedent was deemed mentally incompetent) before his death. Finally, Karen presented no evidence that she suffered damages proximately caused by USAA because in 2014, Dorn closed the USAA IRA and transferred these funds to Wells Fargo. Wells Fargo released the funds to Granddaughters following Decedent's death in 2015.

**Conclusion**

For these reasons, the circuit court's orders granting Respondents' motions for summary judgment are

**AFFIRMED.**

**MCDONALD, HEWITT and VINSON, JJ., concur.**